**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TARYN DIETRICH,<br>on behalf of herself and a class<br>of all those similarly situated, | )<br>)<br>)<br>) | |
| *Plaintiff,* | )<br>) | Case No. _____ |
| v. | )<br>) | JURY TRIAL DEMANDED |
| C.H. ROBINSON WORLDWIDE, INC., | )<br>)<br>) | |
| *Defendant.* | ) | |

## CLASS ACTION COMPLAINT

The plaintiff, Taryn Dietrich, by her counsel, on her own behalf and on behalf of a class of all those similarly situated, brings the following Complaint against defendant C. H. Robinson Worldwide, Inc. pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS §§105, *et seq.* ("IMWL"). She also brings this Complaint on her own behalf pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

### THE PARTIES

1. Defendant C. H. Robinson Worldwide, Inc. ("C. H. Robinson") is a Delaware corporation with its principal place of business in Minnesota. C. H. Robinson does business throughout the state of Illinois, including in this District. C. H. Robinson is a global provider of transportation services and logistics solutions.

2. The plaintiff, Taryn Dietrich, is a female former employee of C. H. Robinson. She was hired by C.H. Robinson on June 10, 2013 to work in its Chicago Central Office, located in

Chicago, IL, as an Assistant Carrier Account Manager (also known as a "Buyer"). She later worked as a Carrier Account Manager and a Senior Carrier Account Manager in that location. She was constructively discharged on June 1, 2017. She was at all relevant times a resident of Chicago, IL.

3.      Each member of the putative class worked as an Assistant Carrier Account Manager (or "Buyer"), a Carrier Account Manager, a Senior Carrier Account Manager, or a similar title for C. H. Robinson within three years of the filing of this Complaint.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the plaintiff resided in this District, the defendant does business in this District and employed the plaintiff in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

7.      The Northern District of Illinois has personal jurisdiction over C. H. Robinson, because it resides in or maintains business offices in this District and does business in the state of Illinois.

8.      Ms. Dietrich has satisfied the administrative requirements for her Title VII and ADA claims. She filed an EEOC charge asserting discrimination based on gender and disability (No. 440-2017-04013) on May 26, 2017 and received a Notice of Right to Sue from the EEOC dated April 20, 2018 (See Exhibit A). This Complaint is timely filed within 90 days of Ms. Dietrich's receipt of the Notice of Right to Sue.

## FACTS

9.     C. H. Robinson is a logistics company that employs hundreds of Assistant Carrier Account Managers (or "Buyers"), Carrier Account Managers, and Senior Carrier Account Managers (and those with similar titles and duties) throughout the country. One of its largest offices is the Chicago Central Office, located in Chicago, IL, where it employs several hundred such employees. It has several other offices throughout Illinois that also employ such employees.

10.     Ms. Dietrich was hired by C. H. Robinson on June 10, 2013. She worked as an Assistant Carrier Account Manager (or "Buyer"), a Carrier Account Manager, and a Senior Carrier Account Manager, until she was constructively discharged on June 1, 2017.

### Wage and Hour Violations

11.     C. H. Robinson is an "employer" as that term is defined by the FLSA and IMWL.

12.     Ms. Dietrich and the putative class members were paid a base salary plus a commission on loads that they booked.

13.     Assistant Carrier Account Managers (or "Buyers"), Carrier Account Managers, and Senior Carrier Account Managers (and those with similar titles and duties) connect C. H. Robinson customers wishing to ship loads of goods with shippers that can deliver said goods. This process is known as "booking loads."

14.     Their job duties are limited to taking customer orders, providing quotes, matching customers with carriers, entering orders into the computerized systems, using said systems to schedule pickup and delivery, and monitoring shipments. These job duties do not constitute an overtime exempt position, nor did they constitute "management" positions, despite the title.

15.     Ms. Dietrich and the putative class members did not exercise independent discretion and judgment in performing these job duties or as to matters of significance. They

only worked with clients and customers that C. H. Robinson had already established. They did not have the authority to make independent business decisions or bind the company without management approval. They did not serve in supervisory roles.

16.     C. H. Robinson misclassified Ms. Dietrich and the putative class members as exempt under the FLSA and IMWL. It knew or should have known that they did not perform work that arguably qualified them as exempt. Ms. Dietrich and the putative class members were not exempt from the FLSA or IMWL because they did not meet the standards for exemption under federal or state law.

17.     Ms. Dietrich and the putative class members regularly worked more than 40 hours per week. They were required to work 5 ten-hour shifts per week and to do additional work outside their shifts. Often, they worked 60 or more hours per week.

18.     Ms. Dietrich and the putative class members did not regularly take meal breaks or other breaks, and instead ate at their desks and continued to work.

19.     C. H. Robinson did not pay Ms. Dietrich and the putative class members overtime or any other additional compensation for the hours they worked in excess of 40 per week.

20.     C. H. Robinson failed to keep records of the time worked each week by Ms. Dietrich and the putative class members in violation of the FLSA and the IMWL.

21.     Electronic records exist that are sufficient to allow Ms. Dietrich and the putative class members to determine the hours they worked.

## **Gender Discrimination**

22.     Ms. Dietrich was a high performer in both her business unit and the Chicago Central office. She regularly ranked in the top 20 of the hundreds of Carrier Account Managers who worked in that office.

23.     The job of Carrier Account Manager at C. H. Robinson was overwhelmingly male-dominated. Few Carrier Account Managers were women, and there were even fewer in company management.

24.     Ms. Dietrich garnered excellent reviews. For example, in her 2013 year-end review, her supervisor stated that "Taryn is truly perfect for this job, has incredible work ethic, is soaking in everything ...." She received a year-end evaluation rating of 4.67 out of 5.

25.     In her 2014 year-end review, Ms. Dietrich's supervisor stated that "Taryn has outstanding sales skills and is obsessive about booking freight and generating revenue both for herself and Robinson ...." She received a year-end evaluation rating of 4.66 out of 5.

26.     In 2015 and 2016, Ms. Dietrich's manager, Eric Herchenroether, began to hold her to higher and different standards than her male counterparts. She was also subjected to sexual harassment by a C. H. Robinson customer.

27.     Despite this differential treatment, Ms. Dietrich's bookings continued to grow, and she continued to perform in the top tier of Carrier Account Managers in the Chicago Central office.

28.     Because of the high volume of her booking, Ms. Dietrich asked for an administrative assistant to help manage her workload more effectively. Mr. Herchenroether denied her request, even though her male counterparts with equal or lower revenue were provided with assistants. She then offered to pay the cost of an assistant herself, but she was still denied.

29.     On August 12, 2016, Mr. Herchenroether placed Ms. Dietrich on a Performance Improvement Plan ("PIP") that raised five issues that were either trivial or unfounded (and were contradicted by her excellent performance metrics).

30.     Ms. Dietrich complained to Mr. Herchenroether that the PIP was based on incorrect information and held her to different standards than her male counterparts, but he refused to withdraw it.

31.     Ms. Dietrich's male counterparts were not similarly placed on PIPs for such matters.

32.     During her 2016 year-end review, Mr. Herchenroether refused to take Ms. Dietrich off the PIP despite the fact that her performance had been error-free for the rest of the year. Instead, he continued the PIP indefinitely, holding the threat of termination over her head. Her male counterparts were not treated this way.

33.     Mr. Herchenroether also instituted a recordkeeping rule that applied only to Ms. Dietrich and not to her male colleagues that added an administrative burden to her workday.

34.     In addition, each year, she was denied year-end, discretionary stock bonuses that were awarded to her male peers who generated less revenue than she did. For example, a male in her business unit who had generated less revenue and was ranked lower in all metrics in 2016 received a stock bonus of $20,000 to $30,000. When Ms. Dietrich asked the company why she had not received a similar bonus, she was told she lacked "leadership." However, her manager regularly called on her to help assist other employees, and she readily did so. The male who received the bonus, by contrast, had been criticized by management and peers as lacking in leadership skills.

35.     While Ms. Dietrich was out on disability leave (discussed further below), Mr. Herchenroether shut down her biggest account as a result of a dispute with the carrier. He did not shut down the accounts of Ms. Dietrich's male counterparts whose carriers had engaged in the same behavior. In fact, during Ms. Dietrich's leave, Mr. Herchenroether allowed male Carrier

Account Managers to book her "auto-assigns" (bookings that she had developed that came to her automatically before she went on leave) with other carriers that had engaged in the same behavior.

36.     After Ms. Dietrich returned to work, the practice of allowing males to book her auto-assigns continued, resulting in her losing thousands of dollars in revenue.

37.     Furthermore, other C. H. Robinson offices in Illinois and around the country allowed male employees to book loads with the same carrier whose account it took away from Ms. Dietrich.

38.     Because the account in question was among Ms. Dietrich's largest, she suffered significant monetary losses as a result. For example, Ms. Dietrich's income from salary and commissions was $185,000 in 2016, but in 2017, prior to her constructive discharge, she earned only her salary (about $40,000 per year).

**Disability Discrimination**

39.     In December 2016, Ms. Dietrich had hip surgery to repair a serious injury. She returned to work in January 2016, but the post-surgical complications forced her to go out on leave again after one week. On her doctor's advice, she remained on leave for three months, then had a second hip surgery in April 2016. She returned to work on May 18, 2016.

40.     While Ms. Dietrich was on disability leave, as discussed above, her supervisor shut down her biggest account. None of her non-disabled counterparts were similarly penalized.

41.     As discussed above, the loss of Ms. Dietrich's biggest account devastated her opportunities to make sales and caused her to lose substantial revenue and constituted a constructive discharge.

42. The day Ms. Dietrich returned from disability leave, Mr. Herchenroether humiliated her and berated her over alleged mistakes she had made during the one week she had returned to work in January 2017. The issues he brought up were situations she had handled according to company policy. After that, she was treated alternately with open hostility or complete silence.

## Retaliation and Constructive Discharge

43. Ms. Dietrich lodged a formal complaint about the discriminatory treatment outlined above with C. H. Robinson's Human Resources Department on May 2, 2017, shortly before returning from disability leave.

44. She provided extensive details in telephone calls and emails to the company's Senior Employee Relations Specialist. She also provided information to the Human Resources representative for the Chicago Central Office. She specifically stated that she believed her negative treatment was due to gender and disability discrimination. She also raised the issue of the sexual harassment she experienced from one of C. H. Robinson's customers.

45. Instead of helping Ms. Dietrich attain the same resources and treatment as her male and non-disabled counterparts, the company downplayed and denied her concerns, and, on May 19, 2017, informed her that the "investigation was closed." Later, she provided additional evidence to back up her complaints, and the company stated that it had opened a new investigation. Ms. Dietrich was never told the results of this second investigation.

46. After she submitted her formal complaint of gender and disability discrimination, Ms. Dietrich was retaliated against. As noted above, she was treated with increasing hostility by her manager and accused mistakes she did not make. She continued to be held to different

standards and procedures than her male and non-disabled coworkers, and additional rules and restrictions were placed on her that were not placed on her coworkers.

47.     On May 26, 2017, Ms. Dietrich filed an EEOC charge. Her working conditions by then had become so intolerable that she could no longer remain at C. H. Robinson.

48.     On June 1, 2017, as a result of C. H. Robinson's actions, Ms. Dietrich was constructively discharged.

## COUNT I

### Violation of the Fair Labor Standards Act
### Brought on Behalf of Ms. Dietrich and a 29 U.S.C. § 216(b) Collective

49.     Ms. Dietrich realleges each of the paragraphs set forth above.

50.     The Fair Labor Standards Act, 29 U.S.C. § 207(a)(l), states that an employee must be paid overtime, equal to one and one-half (1 1/2) times the employee's regular rate of pay, for all hours worked in excess of 40 per week. The FLSA requires that the regular rate of pay include all remuneration for employment paid to or on behalf of the employee, including non-discretionary bonuses and commissions.

51.     As alleged above, Ms. Dietrich and the putative class members regularly worked more than forty hours per week but were not paid overtime.

52.     Ms. Dietrich brings Count I of this action pursuant to 29 U.S.C. § 216(b)'s collective action provisions on behalf of a collective of opt-in collective class members defined as follows:

> All persons who have been employed in the state of Illinois at C. H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Account Managers, Senior Carrier Account Managers, and/or other similar positions at any time from three years before the filing of this action through and including the present and until final resolution of the case, and who have not been paid overtime wages (as defined by the FLSA) for all the time worked over 40 hours in individual work weeks.

9

53.     The putative class members number in the several hundreds. As such, a collective action is the most efficient mechanism for resolving the claims of the class members.

54.     With respect to unpaid overtime, the members of the FLSA opt-in collective class are similarly situated because they perform similar job functions and regularly were not paid overtime due to the above-described policies.

55.     Ms. Dietrich and the members of the putative class are/were "employees" for the purposes of 29 U.S.C. § 203(e).

56.     C. H. Robinson is/was an "employer" of Ms. Dietrich and the members of the putative class for the purposes of 29 U.S.C. § 203(d).

57.     Ms. Dietrich and the putative class members are/were not exempt from the FLSA's overtime provisions for any reason.

58.     C. H. Robinson is/was aware of the duties performed by Ms. Dietrich and the putative class members, that they were not exempt from the FLSA's overtime provisions, and that it had an obligation to pay them overtime at a rate of time and one-half for hours worked over 40.

59.     Ms. Dietrich and the putative class members are/were regularly uncompensated for the overtime hours they worked due to C. H. Robinson's policies. As such, C. H. Robinson violated the FLSA in its failure to pay Ms. Dietrich and the putative members of the FLSA opt-in collective class the required compensation for hours worked.

60.     Further, by failing to record, report and/or preserve records of the actual hours worked by Ms. Dietrich and the members of the putative class, C. H. Robinson has failed to make, keep and preserve records sufficient to determine these employees' wages, hours and other conditions of employment, in violation of the FLSA.

61.     C. H. Robinson's violation of the FLSA is willful, repeated and intentional.

62.     Ms. Dietrich and the putative class members are/were harmed by C. H. Robinson's actions.

63.     By the filing of this Collective and Class Action Complaint, Ms. Dietrich hereby gives her consent to sue under the FLSA, 29 U.S.C. § 216(b). It is anticipated that upon notice, or otherwise, additional similarly-situated individuals will sign Consent to Sue forms and join as plaintiffs in the future.

64.     The class should be conditionally certified, and notice should be promptly provided to the FLSA opt-in collective class as provided by the above section.

65.     The names, addresses, and email addresses of the FLSA opt-in collective class members should be made available from C. H. Robinson's employment records and notice should be given as soon as feasible.

<u>**PRAYER FOR RELIEF AS TO COUNT I**</u>

WHEREFORE, the plaintiff, Taryn Dietrich, on behalf of herself and the FLSA opt-in collective class, prays that the Court provide the following relief as to Count I:

A.      Designate and certify this action as a collective action on behalf of the FLSA opt-in collective class and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in collective class apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designate the plaintiff, Taryn Dietrich, as the representative of the FLSA opt-in collective class, and the undersigned counsel as class counsel;

C.     Enter a declaratory judgment that the practices that form the basis for this count of the complaint are unlawful under the FLSA;

D.     Award compensatory and statutory damages, including liquidated damages;

E.     Award costs of the action incurred, including expert fees;

F.     Award attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

G.     Award pre- and post-judgment interest; and

H.      Award all other relief, whether equitable or legal, as this Court deems necessary, just and proper.

## COUNT II

**Violation of the Illinois Minimum Wage Law**
**Brought on Behalf of Ms. Dietrich and a Putative F.R.C.P. 23 Class**

66.     Ms. Dietrich realleges each of the paragraphs set forth above.

67.     Ms. Dietrich brings Count II of this action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and a class consisting of

> All persons who have been employed in the state of Illinois at C. H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Account Managers, Senior Carrier Account Managers, and/or other similar positions at any time from three years before the filing of this action through and including the present and until final resolution of the case, and who have not been paid overtime (as defined by the IMWL) for all the time worked over 40 hours in individual work weeks.

68.     The IMWL provides that "no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed." 820 ILCS 105/4a(1).

69.     The IMWL, like the FLSA, requires that commissions must be included in computing the employee's overtime and regular rates of pay. 56 Ill. Admin. Code 210.430.

70. The IMWL further provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." 820 ILCS 105/12(a).

71. Ms. Dietrich and the putative class members are/were "employees" for the purposes of 820 ILCS 105/3(d).

72. C. H. Robinson is/was an "employer" for the purposes of 820 ILCS 105/3(c).

73. Ms. Dietrich and the putative class members are not exempt from the IMWL for any reason.

74. Ms. Dietrich and the putative class members are/were regularly uncompensated for hours that they actually worked due to C. H. Robinson's policies.

75. C. H. Robinson is/was aware of the duties performed by Ms. Dietrich and the putative class members, that they were not exempt from the IMWL's overtime provisions, and that it had an obligation to pay them overtime for hours worked over 40.

76. As such, C. H. Robinson violated the IMWL in its failure to pay Ms. Dietrich and the members of the Rule 23 class the required compensation for hours worked.

77. C. H. Robinson's violation of the IMWL is/was willful, repeated and intentional.

78. Ms. Dietrich and the putative class members are/were harmed by C. H. Robinson's actions.

79. The Rule 23 class is so numerous that joinder of all members if impracticable. On information and belief, the class numbers in the hundreds.

80.     There are questions of law or fact common to the class, including, but not limited to, whether C. H. Robinson failed and continues to fail to pay overtime for hours worked in excess of 40 per week.

81.     Ms. Dietrich's claims or defenses are typical of the claims or defenses of the Rule 23 class. She, like the other Rule 23 class members, was subject to C. H. Robinson's policy of failing to pay overtime for hours worked in excess of 40 per week.

82.     Ms. Dietrich will fairly and adequately protect the interests of the Rule 23 class. She has retained counsel competent and experienced in complex class actions and the types of claims alleged herein.

83.     Class certification is appropriate under F.R.C.P. 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the defendant; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

84.     Class certification is also appropriate under F.R.C.P. 23(b)(2) because the defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

85.     Class certification is appropriate under F.R.C.P. 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only the plaintiff, and because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## PRAYER FOR RELIEF AS TO COUNT II

WHEREFORE, the plaintiff, Taryn Dietrich, on behalf of herself and the Rule 23 class, prays that the Court provide the following relief as to Count II:

A.      Designate and certify this action as a class action pursuant to Fed. R. Civ. P. 23 under the appropriate section(s) on behalf of the Rule 23 class.

B.      Designate the plaintiff, Taryn Dietrich, as the representative of the Rule 23 class and the undersigned counsel as class counsel;

C.      Enter a declaratory judgment that the practices that form this complaint are unlawful under the IMWL;

D.      Award all underpayments due to the Rule 23 class;

F.      Award damages in the amount of 2% of the amount of such underpayments for each month that they were not paid;

H.      Award costs of the action incurred, including expert fees;

I.      Award attorneys' fees;

J.      Award pre- and post-judgment interest; and

K.      Award all other relief, whether equitable or legal, as this Court deems necessary, just and proper.

## COUNT III

### Discrimination and Constructive Discharge in Violation of Title VII
### Brought on Behalf of Ms. Dietrich

86.      Ms. Dietrich realleges each of the paragraphs set forth above.

87.      Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), prohibits employers from denying employees equal employment opportunities with

respect to terms, conditions, benefits or privileges of employment based on their sex or gender, whether intentionally or unintentionally.

88.     C. H. Robinson is an "employer" within the meaning of Title VII, and Ms. Dietrich is an "employee" within the meaning of Title VII.

89.     As alleged above, C. H. Robinson discriminated against and denied Ms. Dietrich the equal terms, conditions, benefits or privileges of employment because of her sex or gender and constructively discharged her.

90.     Ms. Dietrich's sex or gender were motivating factors in C. H. Robinson's conduct towards her.

91.     C. H. Robinson's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Dietrich's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct.

92.     Ms. Dietrich was damaged by the defendants' conduct.

## COUNT IV

**Discrimination and Constructive Discharge in Violation of the ADA
Brought on Behalf of Ms. Dietrich**

93.     Ms. Dietrich realleges each of the paragraphs set forth above.

94.     Section 12112(a) of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

95.     The ADA provides that a person who is not actually disabled may be classified as disabled under the statute if the person is "regarded as" disabled by her employer. 42 U.S.C.S. § 12102(2)(c).

16

96.     C. H. Robinson violated § 12112(a) of the ADA by discriminating against Ms. Dietrich and constructively discharging her, on account of his disability or perceived disability.

97.     Ms. Dietrich was damaged by C. H. Robinson's conduct.

## COUNT V

**Retaliation in Violation of Title VII**
**Brought on Behalf of Ms. Dietrich**

98.     Title VII prohibits retaliation for engaging in protected activity.

99.     Ms. Dietrich engaged in protected activity, as alleged above.

100.    C. H. Robinson retaliated against her as alleged above, including by constructively discharging her.

101.    C. H. Robinson's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference to Ms. Dietrich's federally protected rights. Exemplary damages are warranted to prevent similar unlawful conduct.

102.    Ms. Dietrich was damaged by C. H. Robinson's conduct.

## COUNT VI

**Retaliation in Violation of the ADA**
**Brought on Behalf of Ms. Dietrich**

103.    The ADA prohibits retaliation for engaging in protected activity.

104.    Ms. Dietrich engaged in protected activity, as alleged above.

105.    C. H. Robinson retaliated against her as alleged above, including by constructively discharging her.

106.    Ms. Dietrich was damaged by C. H. Robinson's conduct.

**PRAYER FOR RELIEF FOR COUNTS III-VI**

WHEREFORE, the plaintiff, Taryn Dietrich, prays for relief as to Counts III, IV, V, and VI of her Complaint as follows:

A.      An order declaring that the defendant violated Title VII and the ADA;

B.       An order enjoining future such violations;

C.      Reinstatement to the position that Ms. Dietrich would have had but for the defendant's illegal conduct, or, in the alternative, front pay/future damages;

D.      Payment of Ms. Dietrich's lost past wages and benefits (including any and all types of compensation and benefits);

E.      Compensatory damages, including emotional and mental distress damages and reputational damages;

F.      Punitive or exemplary damages;

G.      Payment of Ms. Dietrich's attorneys' fees and all costs of litigation (including statutory fees and expert witness fees);

H.      Payment of pre-and post-judgment interest; and

I.      All other and relief, whether legal or equitable, that the Court may deem appropriate.

**JURY DEMAND**

The plaintiff demands a trial by jury.

Respectfully submitted,                     Jamie S. Franklin

                                            /s/ Jamie S. Franklin
                                            Jamie S. Franklin

18

Jamie S. Franklin, ARDC No. 6242916
THE FRANKLIN LAW FIRM LLC
53 W. Jackson Blvd., Ste. 803
Chicago, IL 60604
(312) 662-1008
(312) 662-1015 (fax)
jsf@thefranklinlawfirm.com

Robin Potter
M. Nieves Bolaños
Patrick Cowlin
POTTER BOLAÑOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois  60601
(312) 861-1800
robin@potterlaw.org
patrick@potterlaw.org
nieves@potterlaw.org

Electronically filed on July 17, 2018

# Exhibit A

EEOC

Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>X EEOC | 440-2017-04013 |

Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>Ms. Taryn Dietrich | Home Phone (Incl. Area Code)<br>847-924-7472 | Date of Birth<br>1/19/1990 |
|---|---|---|
| Street Address<br>1506 N. Sedgwick Street | City, State and ZIP Code<br>Chicago, IL 60610 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>C. H. Robinson | No. Employees, Members<br>500+ Employees | Phone No. (Include Area Code)<br>312-944-7277 |
|---|---|---|
| Street Address<br>1840 N. Marcey Street | City, State and ZIP Code<br>Chicago, IL 60614 | |
| Name<br> | No. Employees, Members<br> | Phone No. (Include Area Code)<br> |
| Street Address<br> | City, State and ZIP Code<br> | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN<br>☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION<br>☐ OTHER (Specify) | Earliest: 2013   Latest: May 26, 2017 (to the present)<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s)):*

    I am a female employee of C. H. Robinson. I began working for C. H. Robinson's Chicago Central Office in June 2013 as a Carrier Account Manager. I am currently a Senior Carrier Account Manager at the company.

    During my employment, I have been discriminated against on account of my gender and disability in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act. I have also been retaliated against for engaging in protected activity. In addition, C. H. Robinson's actions constitute constructive discharge. The specifics of my situation are as follows. ***Please see additional pages below.***

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>5/26/17<br>Date     Charging Party Signature | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

RECEIVED EEOC

MAY 26 2017

CHICAGO DISTRICT OFFICE

*EEOC Charge of Taryn Dietrich*
*Page 2*

## Sex Discrimination

     C. H. Robinson is a logistics company that employs several hundred Carrier Account Managers (also called "Account Reps") throughout the country. Its largest office is the Chicago Central Office, where about half of the company's Account Reps work. The Chicago Central Office's Account Reps are divided into business units called "pods." I am one of very few female Senior Account Reps and the only one who runs a large consolidator (explained further below). The company is male-dominated: overall, females make up less than 10 percent of its Account Reps nationwide. I am a top performer both in my pod and office-wide. In 2016, I ranked 5th in my pod in revenue, volume, and growth, and I was in the top 20 of the approximately 400 Account Reps in the Chicago Central Office.

     Despite my success, I was treated differently and held to different, higher standards than my male counterparts. Because of my high volume of business, I asked for an administrative assistant to help me manage my workload more effectively. My direct supervisor, Eric Herchenroether, denied my request, even though my male counterparts with equal or lower revenue were provided with assistants. I then asked my supervisor for help with my tracking. He responded that it would cost $4,000 out of the branch's budget. I offered to pay the cost myself, but he still denied my request.

     My supervisor, Mr. Herchenroether, placed me on a Performance Improvement Plan ("PIP") on August 12, 2016. Two of the five issues he raised were minor mistakes that I took responsibility for (and even paid for one of them out of my commissions), and two others were incidents that I handled correctly according to company policy and should not have been the subject of disciplinary action at all. The final point was a complaint about my work that was completely unfounded and contradicted by my excellent performance metrics. I brought all these matters, with documentation, to my supervisor, who refused to withdraw the PIP. My male counterparts were not similarly placed on PIPs for minor mistakes or for matters that they handled properly. During my 2016 year-end review, my supervisor refused to take me off the PIP despite the fact that my performance had been error-free for the rest of the year. Instead, he continued the PIP indefinitely, holding the threat of termination over my head. My male counterparts were not treated this way.

     While I was out on disability leave (discussed further below), Mr. Herchenroether shut down my biggest account, O'Hare Cold Storage, purportedly because that carrier was a "known consolidator" (meaning it combined shipments). However, there are many other known consolidators that continue to work with C. H. Robinson (like BTX, Patriot Transportation, Geneva Expedited, and Highlander Transportation). My male counterparts openly book these consolidators with the full knowledge of management, yet they are not penalized. For example, a male account rep in my pod has been booking my auto-assigns (bookings that I had developed that came to me automatically before I went on leave) with other known consolidators. Since I returned from leave, this practice of allowing male reps to book my auto-assigns on known consolidators has continued, resulting me losing thousands of dollars in revenue. Further, other C. H. Robinson offices throughout the country continue to allow male account reps to book business with O'Hare.

*EEOC Charge of Taryn Dietrich*
*Page 3*

---

O'Hare was responsible for approximately 80 percent of my revenue in 2016, and without it, my business was decimated. My income was $185,000 in 2016, and I was on track to earn $250,000 in 2017. Now, because of the loss of my O'Hare and auto-assign business, I expect to earn only my draw of $40,000 in 2017. This represents a loss of $210,000 for *2017. As* a result of C. H. Robinson's actions, I have been effectively terminated..

Prior to shutting down my O'Hare business, Mr. Herchenroether instituted a rule that applied only to me and not to my male colleagues – he required me to note for every load booked with O'Hare that it was a "known consolidator." None of my male colleagues who booked known consolidators had to do so.

In addition, I was denied year-end, discretionary stock bonuses that were awarded to my male peers who generated less revenue than me. For example, a male in my pod who had generated less revenue and was ranked lower in all metrics than me in 2016 received a stock bonus of $20,000 to $30,000. When I asked the company why I had not received a similar bonus, I was told I lacked "leadership." However, my manager regularly called on me to train and assist other employees, and I readily did so. The male who received the bonus, by contrast, had been criticized by management and peers as lacking in leadership skills.

I lodged a formal complaint about the discriminatory treatment outlined above with C. H. Robinson's Human Resources Department on May 2, 2017. I provided extensive details in telephone calls and emails to the company's Senior Employee Relations Specialist, Molly Nelson. I also provided information to the Human Resources representative for the Chicago Central Office, Carmen Smith. I specifically stated that I believed my treatment was due to gender and disability discrimination. Instead of helping me attain the same resources and treatment as my male counterparts, the company downplayed, questioned, and denied my concerns, and, on May 19, 2017, Ms. Nelson informed me that the "investigation was closed." Several days later, when I provided additional evidence to back up my complaints, Ms. Nelson stated that she had opened a new investigation, which has yielded no benefit to me to date.

## Disability Discrimination

In December 2016, I had hip surgery to repair a serious injury that had caused me extreme pain for the prior two years. I returned to work in January 2016, but the post-surgical pain that I experienced was so great that I was forced to go out on leave again after one week. On my doctor's advice, I remained on leave for three months, then had a second hip surgery in April 2016. I returned to work on May 18, 2016.

While I was on disability leave, as discussed above, my supervisor, Eric Herchenroether, shut down my biggest account, O'Hare Cold Storage. None of my non-disabled counterparts were similarly penalized, and they continue to book with other consolidators. In addition, other offices at C. H. Robinson continue to book with O'Hare.

*EEOC Charge of Taryn Dietrich*
*Page 4*

The loss of O'Hare, my biggest account, devastated my business. My revenue is down 80 percent from before I went on leave. In effect, the company pulled my job out from under me while I was gone, constructively discharging me for going on disability leave.

The day I returned from my disability leave, Mr. Herchenroether demanded that I meet with him immediately. During the meeting, he demanded that I read an email critical of me out loud to him – the intent was clearly to humiliate me. He was hostile and berated me over alleged mistakes I had made during the one week I returned to work in January 2017. The issues he brought up were situations I had handled according to company policy. Since then, he has continued to alternately treat me with open hostility or complete silence.

## Retaliation

Since I submitted my formal complaint of gender and disability discrimination on May 2, 2017, I have been retaliated against. I have been treated with increasing hostility by my manager, Mr. Herchenroether, and accused mistakes I did not make. I have continued to be held to completely different standards and procedures than my coworkers, and additional rules and restrictions have been placed on me that were not paced on my coworkers. And, as discussed above, when I returned to work on May 18, 2017, I had been stripped of most of my business.

## Damages

C. H. Robinson's actions constitute discrimination and retaliation in violation of Title VI and the ADA. I have suffered a massive loss in my income, decimating my finances and causing me great hardship. I have also experienced severe emotional distress that negatively impacted my health and my ability to recover from my hip surgeries. The stress from the company's treatment has caused me to lose weight and to be unable to eat or sleep normally. I have been prescribed medication for symptoms caused by the company's actions, and I have incurred out of pocket medical expenses.

I am seeking all damages to which I am entitled in law and equity, include reinstatement to the same terms and conditions of employment as my male and non-disabled coworkers, back pay, front pay, compensatory damages (including medical expenses, future losses, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorney's fees and costs of litigation, and punitive damages.

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Taryn Dietrich
c/o Jamie Franklin, Esq.
FRANKLIN LAW FIRM
53 West Jackson Boulevard
Suite 803
Chicago, IL 60604

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2017-04013 | Katarzyna Hammond, Investigator | (312) 869-8024 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Julianne Bowman*     4/20/18

Enclosures(s)

**Julianne Bowman,
District Director**

*(Date Mailed)*

cc: **CH ROBINSON**

**Molly Nelson**
**Senior Employee Relations Specialist**
**14701 Charlson Road, Suite 1600**
**Eden Prairie, MN 55344**