**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Taryn Dietrich, on behalf of herself and a class of those similarly situated,** | ) ) |
| Plaintiffs, | ) No. 18 C 4871 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| **C.H. Robinson Worldwide, Inc.,** | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion for conditional certification [74] is granted. The parties are directed to meet and confer within 14 days of the date of entry of this order regarding the form and timing of the notice for individuals to opt in. After the parties have met, and no more than 21 days after the date of entry of this order, the parties shall file a statement indicating whether agreement has been reached on the notice issues, and if so, attaching the agreed-upon form of notice and proposed schedule for sending out notices and allowing individuals to opt in to the collective action. In the event agreement is not reached, the parties shall briefly set forth in the statement the issues that remain to be resolved.

## STATEMENT

In her amended complaint, Plaintiff alleges that she was hired in June 2013 by C.H. Robinson Worldwide, Inc. ("CHR"), a nationwide freight broker, as an Assistant Carrier Account Manager, also known as a Buyer. She later worked as a Carrier Account Manager and a Senior Carrier Account Manager. According to Plaintiff, she was constructively discharged on June 1, 2017. The parties agree that Carrier Account Managers' and Senior Carrier Account Managers' job duties include, but are not limited to, taking customer orders, providing quotes, matching customers with carriers, entering orders into the computerized systems, using the computerized systems to schedule pickups and deliveries, and monitoring shipments. While Plaintiff alleges that Assistant Carrier Account Managers, or Buyers, also perform these duties, CHR denies this allegation. Plaintiff was paid a base salary plus a commission during her employment with Defendant.

Plaintiff alleges that she and the putative class members regularly worked more than 40 hours per week; they were required to work 5 ten-hour shifts per week and to do additional work outside their shifts. According to Plaintiff, CHR did not pay her or the putative collective-action members overtime, in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Plaintiff seeks to certify a collective action defined as follows:

> All persons who have been employed in the state of Illinois at C.H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Representatives, Carrier Account Managers ["CAMS"], Senior Carrier Account Managers ["SCAMS"],

Capacity Account Managers, and/or other similar positions, and who did not sign a C.H. Robinson arbitration agreement, at any time from three years before the filing of this action through and including the present and until final resolution of the case.

As noted above, Plaintiff contends that CHR misclassified individuals in the positions identified above as exempt and did not pay them overtime as required under the FLSA. "The [FLSA] authorizes collective actions by employees on behalf of 'similarly situated' employees." *DeKeyser v. Thyssenkrupp Waupaca, Inc*., 860 F.3d 918, 920 (7th Cir. 2017) (citing 29 U.S.C. § 216(b)). "'The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action.'" *Grosscup v. KPW Mgmt., Inc*., 261 F. Supp. 3d 867, 869 (N.D. Ill. 2017) (citation omitted). "'Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process.'" *Id*. at 869-70 (citation omitted). In this, the first step, "plaintiffs have the burden of showing that there are other similarly situated employees who are potential claimants." *Id.* at 870. "[P]laintiffs must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," and "[c]ourts use a 'lenient interpretation' of the term 'similarly situated' in deciding whether plaintiffs meet this burden." *Id.* (citation omitted).[1]

CHR acknowledges that at a "'very high level,' the general duties of the employees in these positions is to secure capacity for [CHR], that is[,] book freight carriers to transport and deliver the freight of [CHR]'s customers." (Def.'s Resp., Dkt. # 96, at 3.) According to CHR, however, there are actually only three different positions (Buyers, CAMS, and SCAMS), and these positions carry different responsibilities. Specifically, CHR contends that SCAMS "supervise CAMS and Buyers, serve as an escalation point on the team, lead account reviews, and are responsible [for] formulating the complex capacity solutions." (*Id*.) CHR goes on to argue that "day-to-day responsibilities within these positions can vary in material ways" depending upon "the employee's team and General Manager, the employee's carrier accounts, and the customers whose freight is being shipped." (*Id*.) However, as noted by another court in this district when addressing a collective-action certification motion in the freight-brokerage industry, "courts find plaintiffs to be similarly situated 'despite some variations in their job duties' when it is clear that they have the same essential responsibilities." *Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2016 WL 7426135, at *4 (N.D. Ill. Dec. 23, 2016). Moreover, the parties agree that the putative members of the collective action were, for the most part, subject to the same compensation structure. *See id.* (certifying collective action of

---

[1] CHR's assertion that the Court should use a more burdensome "intermediate" standard because the parties have engaged in substantial discovery is unavailing given the parties' recent joint request to extend the discovery cut-off date by two months based on the significant discovery left to complete.

2

employees who sold freight carrier services in part because "each putative class member was subject to the same compensation structure, with a base salary and, . . . the possibility of commissions.").

While not robust, at this stage of the inquiry, Plaintiff must only make a modest factual showing, and the written job descriptions, Plaintiff's attestation, and the admissions by CHR satisfy Plaintiff's burden. The parties are directed to meet and confer regarding the form and timing of the notice for individuals to opt in.

Date:  June 13, 2019

                                              **Ronald A. Guzmán**
                                              **United States District Judge**