**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TARYN DIETRICH, on behalf of herself and a class of all those similarly situated, | ) | |
| *Plaintiff,* | ) | Case No. 18-cv-04871 |
| v. | ) | Judge Ronald A. Guzman<br>Magistrate Judge Gabriel A. Fuentes |
| C.H. ROBINSON WORLDWIDE, INC., | ) | |
| *Defendant.* | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFCATION**

**Attorneys for Plaintiff:**

Robin Potter
M. Nieves Bolaños
Patrick Cowlin
POTTER BOLANOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
patrick@potterlaw.org
nieves@potterlaw.org

Jamie S. Franklin
THE FRANKLIN LAW FIRM, LLC
53 W. Jackson Blvd., Suite 803
Chicago, IL 60604
(312) 662-1008
jsf@thefranklinlawfirm.com

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. SUMMARY OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . 2

III. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. The Class Certification Standard . . . . . . . . . . . . . . . . . . . . . . . . 8

B. The Proposed Class Meets the Rule 23 Requirements for Certification of the IMWL Claims . . . . . . . . . . . . . . . . . . . . . . . . 9

1. Rule 23(a)(1): The Class Is Sufficiently Numerous . . . 9

2. Rule 23(a)(2): Issues of Liability Are Common to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

3. Rule 23(a)(3): Plaintiff's Claims Are Typical of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4. Rule 23(a)(4): Plaintiff and Her Counsel Will Adequately Represent the Class . . . . . . . . . . . . . . . . . . 13

5. This Action Satisfies the Requirements of Rule 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

a. Common Questions on Liability Predominate . . 14

b. Superiority of Class Action Method . . . . . . . . . . 16

1. Plaintiff Satisfies Fed.R.Civ.P. 23(b)(3)(A)-(D) . . . . . . . . . . . . . . . . . . . . . . .16

2. The FLSA-Collective Action Is Compatible with the Proposed Class Action . . . . . . . . . . 16

C. In the Alternative, Certification under Rule 23(c)(4) Is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

**CASES:**

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*. 568 U.S. 455, 133 S. Ct. 1184 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14

*Barner v. City of Harvey*, No. 95 C 3316, 1997 U.S. Dist. LEXIS 3570 (N.D. Ill. Mar. 24, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360 (7th Cir. 2015) . . . . . . . . . . . . 12, 15

*Bigger v. Facebook, Inc.*, 375 F.Supp.3d 1007 (N.D. Ill. 2019) . . . . . . . . . .10, 11

*Brown v. Cook County*, 2019 U.S. Dist. LEXIS 134943 (N.D. Ill. Aug. 12, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*Butler v. Sears, Roebuck and Co.*, 727 F.3d 796 (7th Cir. 2013) . . . . . . . . . .12, 14, 15

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Curry v. Kraft Foods Global, Inc.*, No. 10 CV 1288, 2011 U.S. Dist. LEXIS 102510 (N.D. Ill. Sept. 12, 2011) . . . . . . . . . . . . . . . 18

*De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225 (7th Cir. 1983) . . . 13

*Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971 (7th Cir. 2011) . . . . . . 17, 18

*Gaspar v. Linvatec Corp.*, 167 F.R.D 51 (N.D. Ill. 1996) . . . . . . . . . . . . . . 9, 13

*General Tele. Co. Of Southwest v. Falcon*, 457 U.S. 147 (1982) . . . . . . . . .8

*Haschak v. Fox & Hound Rest. Grp., et al.*, No. 10 C 8023, 2012 U.S. Dist. 162476 (N.D. Ill. Nov. 14, 2012) . . . . . . . . . . . . . . . . . . . . . 13

*Healy v. International Brotherhood of Elec. Workers*, No. 11 C 8892, 2013 U.S. Dist. LEXIS 119102 (N.D. Ill. Aug. 22, 2013) . . . . . . . . . . . . . . . 20

*Hudgins v. Total Quality Logistics, Inc.*, No. 16-cv-7331, 2019 U.S. Dist. LEXIS 13793 (N.D.Ill. Jan. 29, 2019) . . . . . . . . . . . . . . . . . .12

*Hudgins v. Total Quality Logistics, Inc.*, No. 16-cv-7331, 2019 U.S. Dist. LEXIS 99895 (N.D.Ill. Jul. 14, 2019) . . . . . . . . . . . . . . . . . .10, 12

*Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012) . . . . . . . . . 9

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Kennedy v. Commonwealth Edison Co.,* 410 F.3d 365 (7th Cir. 2005) . . . . 11

*Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755,
2000 U.S. Dist. Lexis 17832 (N.D. Ill. Dec. 1, 2000) . . . . . . . . . . . . . . . . . .14, 16, 18

*Laughlin v. Jim Fisher, Inc.*, No. 16-cv-1342,
2018 U.S. Dist. LEXIS 93299 (E.D. Wis. June 4, 2018) . . . . . . . . . . . . . . . 17

*Martens v. Smith Barney, Inc.,* 181 F.R.D. 243 (S.D.N.Y. 1998) . . . . . . . . 13

*Messner v. NorthShore Univ. Health Sys.,* 699 F.3d 802 (7th Cir. 2012) . . . 14, 15

*Murray v. GMAC Mortgage Corp.,* 434 F.3d 948 (7th Cir. 2006) . . . . . . . . 18

*Nielsen v. Greenwood*, No. 91 C 6537,
1996 U.S. Dist. LEXIS 14441 (N.D. Ill. Oct. 1, 1996) . . . . . . . . . . . . . . . . .13

*Piscione v. Ernst & Young*, L.L.P., 171 F.3d 527 (7th Cir. 1999) . . . . . . . . .10

*Porter v. Pipefitters Union Local 597,*
208 F. Supp. 3d 894 (N.D. Ill. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Reiseck v. Universal Communications of Miami, Inc.,*
591 F.3d 101 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584 (7th Cir. 1993) . . . . . 8

*Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306 (N.D. Ill. 2004) . . . 14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . 9, 13

*Schaefer-LaRose v. Eli Lilly & Co*., 679 F.3d 560 (7th Cir. 2012) . . . . . . . . 10

*Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . 9

*Swanson v. Am. Consumer Indus*., 415 F.2d 1326 (7th Cir. 1969) . . . . . . . 9

*Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672 (7th Cir. 2001). . . . . . . . 8, 9

*Wal-Mart Store, Inc., v. Dukes,* 564 U.S. 338, 131 S. Ct. 2541 (2011) . . . . 8, 9

*Zelenika v. Commonwealth Edison Co*., No. 09 C 2946,
2012 U.S. Dist. LEXIS 101784 (N.D. Ill. July 23, 2012) . . . . . . . . . . . . . . . 10

**STATUTES AND RULES:**

Fed.R.Civ.P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

820 ILCS 105/1 *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

## I. INTRODUCTION

Taryn Dietrich, the class representative, brings this Renewed Motion pursuant to Fed. R. Civ. P. 23, and seeks to certify an "opt-out" class defined as follows:

> All persons who have been employed in the state of Illinois at C.H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Representatives, Carrier Account Managers, Senior Carrier Account Managers, Capacity Account Managers, and/or other similar positions, and who did not sign a C.H. Robinson arbitration agreement, at any time from three years before the filing of this action through and including the present.

As set forth herein, Ms. Dietrich has amply satisfied the elements of Rule 23(a)(1)-(4), (b)(3) and (c)(4). All class members perform(ed) the same primary job function – booking loads of freight. This duty constitutes "routine individual sales," and is similar to work that has been characterized as "non-exempt" in Seventh Circuit jurisprudence. C.H. Robinson employs hundreds of employees in these positions, ninety-six of whom did not sign arbitration agreements and are in the proposed class. All class members work(ed) in Defendant's Chicago-Central office, sitting in a large warehouse-like space in open pods, each routinely booking scores of loads electronically in Defendant's "Navisphere" system, in the same or similar fashion, during each week of their employment throughout the relevant period.

Whether jobs that consist primarily of booking loads of freight are properly classified as exempt under the IMWL is an overriding issue of fact and law that is capable of a class-wide resolution. This common issue is a precursor for liability for each class member's claim, is based on common evidence and legal theories, and overwhelmingly predominates over all other issues. Further, because the IWML's administrative exemption shares co-extensive elements with the FLSA's administrative and highly compensated employee exemptions, the Rule 23 class is well-suited for adjudication together with the conditionally certified collective. Class treatment is the most efficient way to resolve these interrelated claims and is a superior method of adjudication.

## II. SUMMARY OF RELEVANT FACTS

C.H. Robinson is one of the largest third-party logistics companies in the world. Exh. B, at 12; Exh. C. Ms. Dietrich and the proposed class worked in C.H. Robinson's carrier capacity group in its North America Surface Transportation ("NAST") division. Vigeant Dep, at 51:3-14, 51:25-52:22. The carrier capacity group employs scores of sales employees who are responsible for booking loads of freight with motor carriers throughout the country, including the ninety-six employees who are in the defined class.[1] Vigeant Dep., at 52:15-22, 53:13-17, 55:12-17; Herchenroether Dep., 125:4 - 126:20; Exh. N, class list.

These employees do not perform functions that are ancillary to C.H. Robinson's business. Booking freight is the core function of the NAST and is its primary source of revenue. Smith Dep., 52:3-9 ("Without carrier salespeople, we would not be able to move customer freight. . . There wouldn't be revenue."); Vigeant Dep., at 58: 9-17 (If the carrier capacity group was not booking loads, money would not be coming in through that part of the business); 52:23 - 53:2 ("The customers would pay us to have logistics services for them, and then we would, in turn, work with carriers to negotiate and determine what amount we would pay to move that freight, *and that's where we would make revenue*.") (emphasis supplied); Herchenroether Dep., 109:9-19.

Although the position titles have changed at various times during the relevant period, there are three categories of jobs in the proposed class: (1) Carrier Representatives (also referred to as "buyers" or "Assistant Carrier Account Managers"); (2) Carrier Account Managers or "CAMs" (also referred to as "Capacity Account Managers"); and, (3) Senior Carrier Account Managers or "SCAMs" (also referred to as "Senior Capacity Account Managers").

[1] The company employs scores of sales employees on the "customer" side of its operations who interface directly with customers. *Id.* The company's treatment of its employees on the "customer" side of the business is not at issue in this suit insofar as these employees are not in the defined class.

The evidence clearly demonstrates that employees in these positions performed the same primary job functions – Ms. Dietrich, the company's general managers, its Rule 30(b)(6) witness and the opt-in plaintiffs have provided substantial testimony that the primary duty of all the employees in each of these positions is to book freight. Vigeant Dep., at 93:13-94:3 ("Their primary duty would be to work with carriers to move freight."); 142:2-16 (The "general idea" is they are "booking freight" in these roles.); *see also*, pp. 72:2-18, 101:4-15, 142:11-16; Herchenroether Dep., 49:9-25, 97:4-19, 113:12-114:1, 116:3-17; O'Sullivan Dep., 17:8-18, 18:18-22, 19:2-9, 20:2-3, 20:11-22, 20:25-21:6, 22:6-8, 35:1-7, 35:13-25; Thespadin Dep., 29:2-10; Smith Dep., 52:3-9; Exhs. A, Q, R, S, T and U (Plaintiff and consent plaintiffs' declarations).

The company's written job descriptions further corroborate that the duties of the positions are substantially similar, and primarily involve "securing capacity," i.e., booking loads of freight. Exh. E (Lists first role responsibility of Carrier Account Manager as "Secures capacity by calling carriers, negotiating rates, and buying to honor freight commitments"); Exh. F (Lists first role responsibility of Carrier Representative as "Secures capacity by taking inbound calls based on interest generated from load boards, calling carriers, negotiating rates, and buying to honor freight commitments"); Exh. G (States that Carrier Representative position is "Focused on securing capacity for loads (loads to trucks)"); Exh. H (Lists first Responsibility of Senior Carrier Account Representative as "Secures capacity by calling carriers, negotiating rates, and buying to honor freight commitments."); Exh. I (Job description for Capacity Account Manager states that "Majority of time spent on relationships or deal making (buying, selling, trading, negotiating) to honor day to day commitments of the account.").

Booking loads of freight means finding a carrier and reaching an agreement on a price to transport a load for one of C.H. Robinson's customers, and amounts to routine individual sales. Herchenroether Dep., 97:4-11; Roscich Dep., at 27:4-12; Dietrich Dep., 101:22-103:7; Exhs. A,

Q, R, S, T and U. In connection with booking loads, class members also track loads they booked, and follow through with the carriers to make sure the deliveries are fulfilled, addressing problems that come up during shipment. *Id.* Class members also spend time contacting carriers with whom they have no prior relationship so they may book loads with them in the future. *Id.*

The difference between the three positions is primarily the volume and revenue of freight the employees generate – carrier representatives are required to achieve defined volume and revenue numbers to be promoted to CAM and/or SCAM, and CAMs and SCAMs change positions based on fluctuations in their numbers on an ongoing basis, with no change in job duties. O'Sullivan Dep., 20: 2-22, 35: 17-25; Exh. Q, ¶ 9 (was promoted to SCAM and then re-designated as a CAM based on his numbers, with no change in duties); Exh. R, ¶ 8; Exh. S, ¶ 9; Exh. U, ¶ 9; Herchenroether Dep., 116:3-17 ("[T]hey're all salespeople. They sell different ways. Their styles are different."). Employees in the Carrier Representative position are learning the job and assist SCAMs with loads that they have booked, including by performing similar functions to CAMs and SCAMs such as tracking loads, fielding calls from drivers, and booking loads of freight on their own. Herchenroether Dep., 49:9-25; Exh. Q, ¶ 6; Exh. R, ¶ 6; Exh. S, ¶¶ 6-7; Exh. T, ¶¶ 6-7; Exh. U, ¶ 9.

This is not a case in which class members were geographically disbursed -- all employees in the class worked at Defendant's Chicago-Central location. Exh. N. They sit on the company's sales floor in "pods" in a large, ware-house sized open-concept office space, in full view of other employees and management. Dietrich Dep., 103:2-104:23; Exh. Q, R, S, T, U. The company maintains a central database ("Navisphere") of open loads accessible to all sales personnel, and the load bidding process is completed electronically through this system, with employees booking thousands of loads throughout each day. Exh. Q, ¶¶ 12-17; Exh. R, ¶¶ 13-15; Exh. S, ¶¶ 11-13; O'Sullivan Dep., 24:7-8; Thespadin Dep., 29:8-10. All class members use this system to

bid on and book loads, and they perform this function repetitively and routinely, in the same or similar ways. O'Sullivan Dep., 43:2-9, 44:6-17; Exh. Q, ¶¶ 12-17; Exh. R, ¶¶ 13-15; Exh. S, ¶¶ 11-13.

Pricing for loads is determined by the company's analytics team and/or customer representative team, which sets a "max buy" rate, i.e., the maximum price for the load. Herchenroether Dep., 126:21-127:21; Exh. U, ¶¶ 11-13. The analytics team derives the "max buy" rate from market and customer data and other information. *Id.* A bid that is at or below the "max buy" rate is automatically accepted. Herchenroether Dep., 128:22-130:5; Exh. Q., ¶ 16; Exh. U, ¶ 13. Bids that exceed the "max buy" price are accepted only if approved by the customer or its representative. *Id.*

Management sets uniform metrics for volume (number of loads per day) and revenue (dollar amount of the loads), and these "numbers" are the primary criteria on which class members' job performance is judged. Herchenroether Dep., 110:16-112:12; 239:1-3 ("We are under so much stress to grow, grow, grow, volume, revenue, every year, no stop."); Q, ¶¶ 8-9, Exh. R, ¶ 11; Exh. S; Exh. T, ¶ 9; Exh. U, ¶ 16. Management creates and distributes "scorecards" every month that rank CAMs and SCAMs throughout the Chicago Central office based on volume and revenue, and the company closely monitors these metrics for all employees in these positions on an ongoing basis. Herchenroether Dep., 147:13-149:18. O'Sullivan Dep., 55:13-19 ("We have metrics for each job family . . . The leadership team determines [them]."); Roscich Dep., 51, 6:18; Nelson (Bowling) Dep., 115:7-18.

Ms. Dietrich's experiences are typical of the class. She was hired by C. H. Robinson on or about June 10, 2013. Exh. A, ¶ 3. She worked as a buyer from approximately June 2013 until June 2014, as a Carrier Account Manager from approximately June 2014 until December 2016, and as a Senior Carrier Account Manager from approximately December 2016 until June 1,

2017. *Id.*, ¶¶ 6-10. Throughout her employment, she worked at the Chicago Central location, side-by-side with other class members.

The company's payroll records, produced in discovery, provide a summary of the weeks the class members worked and their earned commissions. Exh. O. The company treated these positions uniformly for compensation purposes and their exempt status. Vigeant Dep., 64:25-65:5, 66:16-20; Exh. D, Answers to Interrogatory ## 5 and 7. As such, CAMs and SCAMS are, and at all relevant times have been, paid the same way – an annual salary plus commission and/or bonus, without any additional wages for overtime. Exh. D, Answer to Interrogatory Number 5.

Carrier Representatives were paid a salary plus commission prior to January 1, 2017, at which point the company uniformly re-classified all employees in this position as "non-exempt." *Id.* After the re-classification, their job duties remained the same. Vigeant Dep., 83: 4-7. The company created plans to re-classify employees in all three positions as non-exempt in December 2016, but ultimately opted to change exempt status for the "buyer" position only. Roscich Dep., 43:8-21, 49:16-25; Thespadin Dep., 34:9-35:10, 39:8-16; Simon Dep., 45:25-46:15.

Ms. Dietrich and other employees in these positions routinely worked overtime, i.e., more than forty hours in a week. Exh. A, ¶¶ 18-26; Exh. Q, ¶¶19-22; Exh. R, ¶¶19-21; Exh. S, ¶¶16-20; Exh. T, ¶¶13-18; Exh. U, ¶¶17-21. Class members were generally required to work fifty hour per week schedules (typically from7:00 a.m. to 5:00 p.m. five days per week). *Id.*, and *see*, Herchenroether Dep., 137: 17-25 (7:00 am to 5:00 pm was a "pretty normal shift"), 141:8 – 142:10 (the "norm is 7 to 5"); O'Sullivan Dep., 73:23-25; Thephasdin Dep., 28: 8-14; Dietrich Dep., 162: 3-20. The Company's 2017 Carrier Sales Manual defines 7 am to 5 pm as the

standard shift in no uncertain terms: "**Daily hours are 7 am to 5 pm. Be on time.** Any other shift must be approved by a manager." Exh. P, at 4 (CHR000000010) (emphasis supplied).

### III. Procedural History

On September 12, 2019, this Court queried about the timing of this Motion (Doc. 139, at 5-6), and Plaintiff responds to the Court's inquiry as follows. Plaintiff has brought this Motion in a timely manner and at the earliest practicable date. Plaintiff first brought the Motion on April 8, 2019 pursuant to the schedule set by the Court. Doc. 84, at 5-6. On April 9, 2019, the Court suspended ruling and expressly held "**the Rule 23 Motion in abeyance**" pending resolution of Plaintiff's Motion for Conditional Certification pursuant to the FLSA. See, Doc. 86; Exh. J, Transcript, 4/9/19, at 4:(4)-5(11) (emphasis supplied).

Proceedings relating to conditional certification were prolonged, at Defendant's behest. Plaintiff filed her conditional certification motion on March 19, 2019. Doc. 61. Prior to filing, Plaintiff asked Defendant to stipulate to expedited Notice, and Defendant refused. Doc. 112-8. At Defendant's request, the briefing schedule was extended to allow it additional time to take Ms. Dietrich's deposition. Doc. 89. The Court ultimately certified the same collective that Plaintiff asked Defendant to stipulate to on June 13, 2019. Doc. 103. Pursuant to the schedule set by the Court, the parties filed a joint statement on the form of Notice and on July 8, 2019 the Court ruled on their disputes. Doc. 105, 106. Eight class members filed consents to join the action between July 17, 2019 (the date Notice was mailed) and September 16, 2019, the date the opt-in period closed. Docs. 103, 110, 118, 122, 135, 136, 137; Doc. 107-1.

The record strongly demonstrates that Defendant unreasonably delayed producing information relevant to class certification and thus protracted the proceedings. On April 8, 2019, Judge Cole sanctioned Defendant and held that its Rule 30(b)(6) witness was inadequately prepared to testify regarding hours worked by the defined class. Doc. 82. On July 26, 2019,

Plaintiff filed a renewed Motion for Sanctions because Defendant's second Rule 30(b)(6) witness was equally unprepared and provided essentially the same testimony despite Judge Cole's sanctions order. Doc. 115. In this second Motion, Plaintiff also sought sanctions for Defendant's concealment and last-minute disclosure of information relating to its December 2016 plans to re-classify all employees in these positions to non-exempt, and for its refusal to produce payroll records for the class in contravention of clear legal authority. *Id.* On August 14, 2019, the parties entered a stipulation pursuant to which Defendant agreed to produce all the information at issue in the second sanctions motion, a strong reflection on the merits of the Motion. Based on the stipulation, Magistrate Judge Fuentes denied the motion *without prejudice* pending production and review of Defendant's new discovery responses. Doc. 129, 132.

Plaintiff re-files this Motion now with the benefit of this additional discovery. Plaintiff files this Motion one week after the opt-in period closed. Motions for summary judgment have not been filed, no schedule for dispositive motions has been set, Defendant has not sought depositions or discovery from the "opt-in" plaintiffs (See, Doc. 120, at 2), nor has it moved to decertify the conditionally certified collective.

## IV. ARGUMENT

### A. Class Certification Standard

The plaintiff bears the burden of showing that class certification is appropriate. *General Tele. Co. Of Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). The district court possesses broad discretion in determining whether that burden is met. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998). When evaluating a certification motion, the court's analysis may "entail some overlap with the merits." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*. 568 U.S. 455, 133 S. Ct. 1184, 1194 (2013) *quoting Wal-Mart Store, Inc., v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011);

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 133 S. Ct. at 1195.

### B. The Proposed Class Meets the Rule 23 Requirements for Class Certification of the IMWL Claims

#### 1. Rule 23(a)(1): The Class Is Sufficiently Numerous

Ninety-six employees worked in the above-job categories within the limitations period and did not sign arbitration agreements. Exh. O. This easily satisfies the numerosity element. *Swanson v. Am. Consumer Indus*., 415 F.2d 1326, 1333 (7th Cir. 1969) (noting that 40 class members is sufficient); *Gaspar v. Linvatec Corp.*, 167 F.R.D 51, 56 (N.D. Ill. 1996) (18 class members deemed sufficiently numerous).

#### 2. Rule 23(a)(2): Issues of Liability Are Common to the Class

The commonality requirement depends on a common contention that is capable of class-wide resolution, thus allowing the truth of an issue central to the claim to be determined "in one stroke." *Wal-Mart Store, Inc., v. Dukes*, 564 U.S. 388, 131 S. Ct. 2541, 2551 (2011); *and see Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012). A single common question will suffice. *Jamie S.*, 668 F.3d at 497. Where the defendant engages in standardized conduct against the putative class members, the legality of which is an "outcome determinative issue," commonality is met. *Healy v. International Brotherhood of Elec. Workers*, No. 11 C 8892, 2013 U.S. Dist. LEXIS 119102, * at 12-13 (N.D. Ill. Aug. 22, 2013). Commonality does not demand that each class member have an identical claim. *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). Thus, some factual variation between class members will not defeat class certification. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

Commonality is satisfied here. Defendant claims that all class members are exempt under the administrative or highly compensated employee exemptions, and as set forth above, it treated

the job categories uniformly for purposes of overtime eligibility. Doc. 60, at 44 (Defense No. 18). The highly compensated employee exemption is a defense to the FLSA but is not available under the IMWL. *Zelenika v. Commonwealth Edison Co*., No. 09 C 2946, 2012 U.S. Dist. LEXIS 101784, at *28-48 (N.D. Ill. July 23, 2012) (Finding plaintiffs were "exempt" under the FLSA's "highly compensated employee" exemption but denying summary judgment on claim that Plaintiffs were "administrative" exempt employees under the IMWL). Rather, the IMWL applies administrative exemption as defined by the FLSA and its regulations "as they exist on March 30, 2003," a time at which the highly compensated employee exemption did not exist. 820 ILCS 105/4a(2)(E).

Employees in the putative class are entitled to overtime under the IMWL *unless Defendant* can prove that the IMWL's administrative exemption applies. *Id*. To prove the exemption, Defendant must establish, *inter alia*, that the "primary duty" of the employees is administrative, *and* that the primary duties require the exercise of both discretion and independent judgment. *Zelenika v. Commonwealth Edison Co.*, 2012 U.S. Dist. LEXIS 101784, at *41-42; *Bigger v. Facebook, Inc.*, 375 F.Supp.3d 1007, 1020 (N.D. Ill. Mar. 22, 2019) (denying motion for summary judgment with respect to administrative exemption for sales employees under the IMWL whose job was to sell ads for Facebook); *see also, Piscione v. Ernst & Young*, L.L.P., 171 F.3d 527, 533-34 (7th Cir. 1999) *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

"[W]hen an employee is engaged in the core function of a business, his or her task is not properly categorized as administrative." *Schaefer-LaRose v. Eli Lilly & Co*., 679 F.3d 560, 574 (7th Cir. 2012); *Bigger v. Facebook*, 375 F.Supp.3d at 1016 (analyzing Seventh Circuit jurisprudence and finding "routine individual sales" is not administrative work); *Hudgins v. Total Quality Logistics, Inc.*, No. 16-cv-7331, 2019 U.S. Dist. LEXIS 99895 (N.D.Ill. Jul. 14,

2019) (The administrative exemption as creates a dichotomy between "production" and "sales duties" on the one hand, and "administration" on the other). Here, the core function of C.H. Robinson's business at issue is selling loads of freight. It does not own trucks or ship any freight on its own -- its entire operation as a freight services broker is based on its sales representatives making sales. Thus, class members' primary duty, "booking freight," constitutes "production" work for the company. "Sales work," such as booking loads, does *not* fall within the ambit of the administrative exemption. *Bigger*, 375 F.Supp. 3d at 1016. Whether Defendant can prove its carrier sales employees' primary duty fits into an overtime exemption is a question common to the entire class and it will be answered with common proof.

Plaintiff also asserts that the work did *not* require independent judgment or discretion, the other principal requirement of the exemption. This claim is also governed by common proof, including for instance, the absence of discretion in pricing and the entirely rote nature of booking loads of freight electronically, described in detail above. *See Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 374 (7th Cir. 2005) (exemption is not available for employees who simply apply well-established techniques or procedures described in manuals or other sources within prescribed limits). Further, before the question of judgment and discretion even arises, Defendant must first establish on the merits that the "primary duty" of the Sales Reps is 'administrative' and not sales: if C.H. Robinson fails in that effort, the "inquiry ends." *Reiseck v. Universal Communications of Miami, Inc.*, 591 F.3d 101, 108 (2nd Cir. 2010).

The merits of this defense are <u>not</u> at issue in this Motion, as set forth above. Rather, the question for this motion is whether Defendant's affirmative defense can be resolved class-wide. It can, because the primary duty of the positions in this class was the same. Whether this primary duty constitutes non-exempt "sales work" and whether it required the exercise of judgment and discretion can be determined on a class basis "in one stroke," thereby resolving claims for the

entire class. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374-375 (7th Cir. 2015) (Finding issue of whether employer had an unofficial policy of requiring employees to work off the clock was a common question capable of class-wide resolution).

In *Hudgins v. Total Quality Logistics*, No. 16-cv-7331, 2019 U.S. Dist. LEXIS 13793 (N.D.Ill. Jan. 29, 2019), Judge Kennelly denied a motion to decertify a previously-certified collective action of 140 employees who worked for a freight services broker and performed very similar jobs as the employees in this suit. He found that the application of the administrative exemption could be adjudicated on a class-wide basis because, as here, the employees performed similar job functions. *Id.*, * 17-21. More recently, he denied summary judgment for the collective finding material facts were disputed, further illustrating that the determination regarding the exemption could be made on a class-wide basis. 2019 U.S. Dist. LEXIS 99895 *14 (N.D.Ill. June 14, 2019) ("If the plaintiffs' characterizations of evidence going to TQL's core function and LAE's and trainees' primary duties were credited, **those roles would probably be ineligible for the administrative exemption**.") (emphasis supplied).

C.H. Robinson's exemption defense satisfies the commonality requirement for the same reasons in *Hudgins*. If Defendant does not prove the exemption applies, liability will be established as to every employee in the class. Because the claims of individual class members are based on the common application of the IMWL, and because class members were each aggrieved by the same mis-classification policy in the same or similar way, commonality is satisfied. *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (issue central to validity of the plaintiff's claim that can be resolved "in one stroke" justifies class certification).

**3. Rule 23(a)(3): Plaintiff's Claims Are Typical of the Class**

Claims of the class representative and class members are typical if they arise from the same practice or course of conduct and are based on the same legal theory. *Keele*, 149 F.3d at

595; *De La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Typicality and commonality are closely akin. *Rosario*, 963 F.2d at 1018. "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp*., 167 F.R.D. 51, 57 (N.D. Ill. 1996). Ms. Dietrich's IMWL claims arise from the same alleged unlawful conduct as the claims of the class -- Defendant's failure to pay overtime pay due its mis-classification policy -- and are based on the same legal theory. This common practice is and will be *the principal issue* of the litigation. This makes the claims "typical" under Rule 23(a)(3).

**4. Rule 23(a)(4): Plaintiff and Her Counsel Will Adequately Represent the Class**

The adequacy requirement is meant to ensure that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Courts determine adequacy in two parts: (1) the plaintiff's ability to ensure vigorous advocacy on behalf of the class without interests antagonistic to the class; and (2) the adequacy of the named plaintiff's counsel to fairly and adequately represent the interests of the class. *Haschak v. Fox & Hound Rest. Grp., et al.,* No. 10 C 8023, 2012 U.S. Dist. 162476, at * 8 (N.D. Ill. Nov. 14, 2012). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 259 (S.D.N.Y. 1998) *quoting Krueger v. New York Tel. Co*., 163 F.R.D. 433 (S.D.N.Y. 1995). "The burden of demonstrating adequacy under this standard …is not a heavy one." *Nielsen v. Greenwood*, No. 91 C 6537, 1996 U.S. Dist. LEXIS 14441, at *16 (N.D. Ill. Oct. 1, 1996).

Ms. Dietrich worked at C.H. Robinson for four years and held the positions in the defined class. Her claims are identical to those of the rest of the class. She has shown her commitment to vigorous litigation by retaining counsel, filing suit, answering written discovery, reviewing and producing voluminous documents, providing a sworn declaration and sitting for a full, seven-hour deposition. Ms. Dietrich does not have any interests antagonistic to the class. This satisfies

the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc*., 220 F.R.D. 306, 314 (N.D. Ill. 2004); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2000 U.S. Dist. Lexis 17832, *17-18 (N.D. Ill. Dec. 1, 2000).

Plaintiff's counsel is also qualified and able to conduct the proposed litigation on behalf of the class. Under Rule 23(g), courts must consider four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) class counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g). Those requirements are met here. Exh. L, Exh. M; *see also Brown v. Cook County*, 2019 U.S. Dist. LEXIS 134943 *53-54 (N.D. Ill. Aug. 12, 2019) (Kennelly, J.); *Porter v. Pipefitters Union Local 597*, 208 F. Supp. 3d 894, 908-909 (N.D. Ill. 2016).

**5. This Action Satisfies the Requirements of Rule 23(b)(3)**

Class certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Amgen*, 133 S. Ct. at 1191. Plaintiff's action here meets that standard.

**a. Common Questions on Liability Predominate**

Common questions predominate for purposes of Rule 23(b)(3) if undergirding the claims of the named plaintiffs and those of the class is a "common nucleus of operative facts and issues." *Messner v. NorthShore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012); *and see Butler*, 727 F.3d at 801. The "predominance requirement is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Id., quoting* 7AA C. Wright, A. Miller & M. Kane, Federal Practice and

Procedure, § 1778. This does not mean that individual questions must be absent. "The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 699 F.3d at 815. Neither is the predominance analysis "bean counting" or "counting noses." *Butler*, 727 F.3d at 801. The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* Common issues need only predominate, not outnumber individual issues. *Id.*

The fact that individualized inquiries may be necessary to determine damages does *not* defeat predominance. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d at 379-381 ("It is routine in class actions to have a final phase in which individualized proof must be submitted."); *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 441-442 (7th Cir. 2015) (same).

Here, Defendant has asserted the same affirmative defense based on the IMWL's "administrative" exemption for each class member. This defense is outcome determinative and is a precursor for liability for each class member. As such, it predominates over any individual questions. A class action is the most efficient method to adjudicate the common factual and legal issues related to this defense. The size of the class (ninety-six members) is manageable, and as set forth above, class members typically worked uniform fifty-hour shifts, which provides a starting point for damages.

**b. Superiority of Class Action Method**

**1. Plaintiff Satisfies Fed. R. Civ. P. 23(b)(3)(A)-(D)**

In determining whether a class action is superior to other methods for resolving a controversy, pertinent considerations are: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

These considerations in this case demonstrate superiority. Under the first and second factors, there is no known interest from putative class members to control this litigation as against class treatment. "Thus, there does not appear to be an interest of individual members in controlling the prosecution of the state claims." *Ladegaard*, 2000 U.S. Dist. LEXIS 17832, at * 26. Under the third factor, it is desirable to have all this litigation concentrated in one action before this Court -- the factual issues regarding the failure to pay overtime are the same between Plaintiff and the class, and the IMWL-class and FLSA-collective action claims are co-extensive. This single forum will create consistency. Under the fourth factor, there will not be any difficulties in the management of the class claims. The class is ascertainable. The size of the class and the geographical location of its members create no difficulty. Issues specific to individual members, such as damages or defenses (if any), can be determined through a separate motion or hearing, as set forth above.

**2. The FLSA-Collective Action Is Compatible with the Proposed Class Action**

During the hearing on September 12, 2019, the Court expressed concerns with some relation to the superiority requirement. Doc. 139. Specifically, the Court opined that the "opt in"

rate reflected a lack of interest and undermines Rule 23 certification, noting that 9 of the 96 employees in the certified collective (including Ms. Dietrich) opted in. Doc. 139, at 5-6. The Court also questioned whether class counsel's interest in the suit outweighs those of the absent class members and thus amounts to the "tail wagging the dog." *Id.*, at 6. Plaintiff responds to these comments as follows.

In *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 977-78 (7th Cir. 2011), the Seventh Circuit rejected similar arguments and reversed the District Court's determination that a class action was inappropriate including because the Rule 23 class "dwarfed" the FLSA collective. The Seventh Circuit stated: "Nothing we find suggests that the FLSA is not amenable to state-law claims for related relief in the same federal proceeding." *Id.* It further held: "A simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action …" *Id.*, at 980-81.

The Seventh Circuit instructed that in adjudicating combined actions under the FLSA and IMWL, "the question of whether a class should be certified under Rule 23(b)(3) will turn-as it always does-on the application of the criteria set forth in the rule." *Id.*, at 973-74. As shown above, Plaintiff has satisfied each of the criteria of Rule 23(a) and (b)(3), and thus, the presence of the opt-in class does not undermine certification. *Id., and also, Laughlin v. Jim Fischer, Inc.*, No. 16-C-1342, 2018 U.S. Dist. LEXIS 93299, at *18 (E.D. Wis. June 4, 2018). The size and ratio of the FLSA collective in relation to the proposed IWML class in this suit are comparable to that in *Ervin*, where there were 30 opt-in Plaintiffs and between 180 to 250 Rule 23 class members. Here, as in Ervin, the IMWL and FLSA claims are directed to the exact same mis-classification policy of the Defendant and both claims require substantially similar burdens of proof. Thus, as in *Ervin*, there is a close "identity of issues" between the state and federal claims that strongly favors combined adjudication. *Id.*

Proof that absent class members have an interest in participating in the litigation is not a requirement under Rule 23(a) or (b) and should not be considered as a factor in this Motion. To the contrary, an express purpose of the class action device is to provide a procedural remedy for situations where individuals choose not to bring their own suits. *See, Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate"). The fact that absent class members have opted not to pursue claims on their own is thus a factor that weighs in favor of, and not against, class certification. *Curry v. Kraft Foods Global, Inc.*, No. 10 CV 1288, 2011 U.S. Dist. LEXIS 102510, at *20-21 (N.D. Ill. Sept. 12, 2011) (finding that the fact that many individual class members would otherwise be unlikely to bring claims on their own "makes Plaintiffs' claims ideal for resolution as a class action").

Further, the "opt in" rate in this suit (which is only slightly lower than that in *Ervin*) does not reflect a lack of interest by absent class members, and Plaintiff submits such an inference is not grounded in the record. C.H. Robinson is a non-unionized employer, and class members are "at will" employees. Many still work for the company and others continue to work in the freight services industry, a *niche* field where C.H. Robinson is the leading stakeholder. Ms. Dietrich has brought a retaliation claim as part of this suit. Doc. 58, at 5. Discovery has produced substantial evidence to support this claim, including *inter alia* that her general manager sought to surreptitiously "track" private emails to her boyfriend and the entire team due to the fact she had filed an EEOC charge and because a team member she grew up with asked about the difference between job duties of CAMs and SCAMs, an issue in this suit. Herchenroether Dep., 214:9-218:6 ("I imagine I was a little paranoid."); 225:3-226:18; 227:7-228:24. This record regarding the company's culture and the real possibility that class members feared retaliation should not be discounted. *Ladegaard*, 2000 U.S. Dist. LEXIS 17832, at *13-14 ("The possibility of retaliation

is also a factor when considering whether joinder is impracticable"); *Barner v. City of Harvey*, No. 95 C 3316, 1997 U.S. Dist. LEXIS 3570, at *8 (N.D. Ill. Mar. 24, 1997) (Same).

Plaintiff also submits that the Court's comments regarding counsel's interest in pursuing these claims are also misplaced. Class counsel's commitment to recover overtime wages for all employees who were misclassified, including those who did not opt into the suit, is their duty under Rule 23, and cannot properly be deemed a factor that undermines certification. Fed. R. Civ. P. 23(g)(1)(A). The fact that attorney fees may be awarded at the conclusion of the suit subject to court approval does not have any bearing on the appropriateness of class certification now. See, Fed. R. Civ. P. 23(h). To the contrary, the only relevant inquiry here is whether class counsel satisfy the "adequacy" element, and as set forth above, they do.

Furthermore, counsel's pursuit of claims on behalf of absent class members furthers explicit policy aims underpinning the IMWL which was enacted to allow private plaintiffs to pursue "opt-out" class actions on behalf of un-named employees. 820 ILCS 105/2 ("It is against public policy for an employer to pay to his employees an amount less than that fixed by this Act" and stating any sub-standard wage is "unreasonable and oppressive.") Illinois' public policy favoring aggressive enforcement of the IMWL through private litigation was recently reinforced by its February 2019 amendments wherein the legislature increased by more than double the penalty for sub-standard wage payments from 2% to 5% per month along with adding treble damages to any unpaid overtime or sub-minimum wage payments. 820 ILCS 105/12(a).

For these reasons, Plaintiff submits that the Court's characterization of the efforts by her and her counsel to obtain relief for mis-classified employees who did not "opt in" as the "tail wagging the dog" is unfair and unwarranted, contrary to law, and that Plaintiff has satisfied the Fed. R. Civ. P. 23(b)(3) superiority requirement. Doc. 139, 5:25-6:6.

**C. In the Alternative, Rule 23(c)(4) Certification Is Appropriate**

In the alternative, the common factual and legal issues relating to whether the IMWL administrative exemption applies are suitable for issue certification under Rule 23(c)(4), for the reasons set forth above. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 492 (7th Cir. 2012); *Healy v. IBEW, Local Union No. 134*, 296 F.R.D. 587, 596 (N.D. Ill. 2013); *Jacks v. DirectSat USA, LLC*, No. 10-cv- 1707, 2015 U.S. Dist. LEXIS 28881, at *10-19 (N.D. Ill. Mar. 10, 2015).

**V. CONCLUSION**

Class certification is warranted in this case because the resolution of Ms. Dietrich's overtime claims will resolve the overtime claims of all employees in the class. For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify Plaintiff's IMWL claims as a class action under Rule 23; (2) order that notice be sent to all class members; (3) appoint Taryn Dietrich as Class Representative; (4) appoint Plaintiff's undersigned counsel as class counsel; and (5) grant such other relief as the Court deems proper.

Respectfully submitted,

/s/ M. Nieves Bolaños
One of Plaintiff's Attorneys

Robin Potter
M. Nieves Bolaños
Patrick Cowlin
POTTER BOLANOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
patrick@potterlaw.org
nieves@potterlaw.org

Jamie S. Franklin
THE FRANKLIN LAW FIRM, LLC
53 W. Jackson Blvd., Suite 803
Chicago, IL 60604
(312) 662-1008
jsf@thefranklinlawfirm.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION** was served upon all parties by e-filing on September 23, 2019 with the Clerk of the Court using the CM/ECF system.

By: /s/ M. Nieves Bolaños
M. Nieves Bolaños