**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Taryn Dietrich, individually and on** | ) | |
| **behalf of others similarly situated,** | ) | **No. 18 C 4871** |
| **Plaintiff,** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **v.** | ) | |
| | ) | |
| **C.H. Robinson Worldwide, Inc.,** | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court grants Plaintiff's renewed motion for class certification [146]. Plaintiff shall file a statement within 7 days of the date of entry of this order indicating how she intends to proceed with notice to the class.

### STATEMENT

**Background**

In her amended complaint, Plaintiff alleges that she was hired in June 2013 by C.H. Robinson Worldwide, Inc. ("CHRW"), a "third-party transportation logistics company providing a combination of freight transportation services, logistics solutions, and supply chain services to companies through global transportation and distribution networks." (Def.'s Ex. A., Hoffman Decl., Dkt. 169-1, ¶ 4.) Plaintiff started as an Assistant Carrier Account Manager, also known as a Buyer, and later worked as a Carrier Account Manager and a Senior Carrier Account Manager (without divulging what the acronym stands for, CHRW refers to these positions collectively as "CSEs," so the Court does as well). The CSEs, including Plaintiff while she was employed at CHRW, work in its North American Surface Transport business segment in Chicago. While the parties disagree on the specifics, they generally are in accord that these positions assist in providing logistical services, including booking loads of freight, with motor carriers across the country. Plaintiff alleges that despite regularly working more than 40 hours per week, she and the putative class members were not paid overtime, in violation of the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Plaintiff also alleges an individual claim for constructive discharge.

The Court conditionally certified a collective action under the FLSA on June 13, 2019, and eight individuals opted in, for a total of nine collective-action members. Plaintiff now seeks certification of a class under Federal Rule of Civil Procedure ("Rule") 23(b) with respect to the IMWL claim. Plaintiff proposes the following class definition:

All persons who have been employed in the state of Illinois at C.H. Robinson as

Assistant Carrier Account Managers, Buyers, Carrier Representatives, Carrier Account Managers, Senior Carrier Account Managers, Capacity Account Managers, and/or other similar positions, and who did not sign a C.H. Robinson arbitration agreement, at any time from three years before the filing of this action through and including the present.

(Pl.'s Mem. Supp. Renewed Mot. Class Cert., Dkt. # 147, at 6.)[1]

## Analysis

To be certified as a class action, a proposed class must satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and one of the three alternative requirements in Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) provides that a class may be certified if: (1) the class is so numerous that joinder of all putative class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the putative class ("commonality"); (3) the claims or defenses of the named party are typical of the claims or defenses of the putative class members ("typicality"); and (4) the named party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). "[A] proposed class must always meet the Rule 23(a) requirements[.]" *Messner*, 669 F.3d at 811. "Because Rule 23(a) provides a gate-keeping function for all class actions, ordinarily [courts] would begin there and only turn . . . to Rule 23(b) after [the court is] certain that all of Rule 23(a)'s requirements had been met." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015).

Numerosity is satisfied, given that there are approximately 96 employees who worked in the relevant positions. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.").

"[C]ommonality as to every issue is not required for class certification." *Bell,* 800 F.3d at 381. Plaintiff contends that the commonality element is met because CHRW asserts that the putative class members are exempt from the IMWL based on their status as administrative employees. (Def.'s Mem. Opp'n Pl.'s Renewed Mot. Class Cert., Dkt. # 168, at 16 ("Plaintiff concedes that whether CHRW violated the IMWL turns on whether CHRW properly classified the putative class members as exempt.").) The IMWL applies the administrative exemption "as defined by or covered by the [FLSA] and the rules adopted under that Act, as both exist on March 30, 2003." 820 ILCS 105/4a. *See Bartlett v. City of Chi.*, No. 14 C 7225, 2019 WL 4823532, at *4 (N.D. Ill. Oct. 1, 2019) ("Courts have generally held that the IMWL parallels the

---

[1] Plaintiff states that Assistant Carrier Account Managers (also known as "Buyers") were reclassified as non-exempt in 2016. Therefore, only those individuals who were Assistant Carrier Account Managers prior to the reclassification date in 2016 are putative class members, and any reference in this order to Assistant Carrier Account Managers or Buyers is so qualified.

FLSA, and the Illinois Administrative Code provides that FLSA regulations provide guidance in interpreting the IMWL . . . ."). Therefore, for CHRW to prevail on its administrative- exemption defense, "it must establish that Plaintiff is overtime exempt under the FLSA exemptions that existed as of March 30, 2003." *Bigger v. Facebook, Inc*., 375 F. Supp. 3d 1007, 1020 (N.D. Ill. 2019).

"[I]t is Plaintiff['s] burden at the class-certification stage to demonstrate, under Rule 23, that resolving this exemption issue on a class-wide basis is appropriate." *Dailey v. Groupon, Inc*., No. 11 C 5685, 2014 WL 4379232, at *4 (N.D. Ill. Aug. 27, 2014). To qualify for the administrative exemption, an employer must show that the position at issue is compensated on a salary basis of not less than $684.00 per week, and its primary duty (1) is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and (2) includes the exercise of discretion and independent judgment with respect to matters of significance. 29 U.S.C. § 213(a)1); 29 C.F.R. § 541.200. CHRW contends that ascertaining the putative class members' duties requires an individualized inquiry into each putative class member's employment duties and responsibilities, thus defeating commonality. *See Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). Plaintiff, however, argues that the primary duties of the relevant positions are essentially the same, *i.e*., to sell ("book") freight, and that any differences among the carrier representatives are due to variances in the volume and revenue of freight that the employees sell.

The Court is persuaded that Plaintiff has demonstrated commonality. Whether an employee's "primary duty" is administrative, establishing in part the exemption from the IMWL overtime requirements, is one that can be made for the class members as a whole. An employee's "primary duty" is the "principal, main, or most important duty that the employee performs." 29 C.F.R. § 541.700. Contrary to CHRW's assertions, individualized inquiries into all of the peripheral tasks performed by individuals in the relevant positions is unnecessary. *See In re AON Corp. Wage & Hour Empl't Practices Litig*., No. 08 C 5802, 2010 WL 1433314, at *7 (N.D. Ill. Apr. 8, 2010) ("The use of the term 'primary duty' implies that the applicability of the administrative exception focuses on the core work functions of the employees at issue and does not require a detailed individualized inquiry as to the day-to-day tasks performed."). Indeed, CHRW's own response to Plaintiff's first set of interrogatories belies its position that the administrative exemption determination is not one that can be made across the board. Specifically, in response to Plaintiff's Interrogatory No. 1, which asks CHRW to identify the factual and legal bases used to classify CSEs as overtime-exempt employees, CHRW states that most individuals in these positions "earned more than $100,000 in annual compensation performing office work." CHRW goes on to state:

> Further, *although their individual duties and responsibilities vary* based upon their team, customers, and supervisors, *all these employees' primary duties include the performance of office or non-manual work directly related to the management or general business operations, and their primary duties also include the exercise of discretion and independent judgment with respect to matters of significance*.

(Pl.'s Ex. D, Def.'s Answer Pl.'s 1st Set Interrogs., Dkt. # 147-4, Answer No. 7, at 8) (emphasis added). Thus, CHRW's characterization of the issue indicates that the primary-duty inquiry can be made on a class-wide basis.

Moreover, in 2016, as a result of anticipated regulation changes by the Department of Labor, CHRW planned to move all CSEs from exempt to non-exempt status. (11/5/19 Vigeant Dep., Dkt. # 172-1, at 33:22-25-34:1-2.) While this fact is not determinative of whether the exemption issue can be resolved on a class-wide basis, it is one factor for the Court to consider in deciding whether commonality has been met. *See Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2019 WL 354958, at *4 (N.D. Ill. Jan. 29, 2019) (in denying motion to decertify collective action regarding alleged overtime violations for individuals who performed job duties similar to those in this case and who worked for one of CHRW's competitors, stating that "[i]t is also probative that the entire LAE [logistics account executives] subclass was categorically classified as exempt from overtime pay by TQL. That policy suggests that the company itself viewed the LAEs as similarly situated for the purposes of overtime pay.").[2] CHRW's assertion that the reclassification effort was based solely on salary level and not job duties ignores that CHRW itself was treating these positions as a group in its reclassification effort. *Id*. at *6 ("The Court is also persuaded that TQL's decision to categorically exempt all LAEs is probative. Despite TQL's efforts to cast this point as immaterial, such a 'uniform exemption policy is certainly relevant' in determining whether an exemption defense would be individualized and thus undermine the effectiveness of collective action.") (citation omitted).

Nor does the fact that some CSEs may have spent more time researching industries, training or mentoring other employees, resolving customer service issues, and cultivating and advising clients rather than actually booking freight cause this Court to alter its decision. "[T]he Seventh Circuit has rejected the proposition that the allocation of an employee's time controls the determination of her 'primary duty' for the purposes of the administrative exemption." *Id*.

While the Court's observations about the putative class members' tasks touch on the merits of CHRW's administrative-exemption defense, the Court emphasizes that it is not, at this time, ruling on the issue of what the CSEs' primary duty is or whether it qualifies for the administrative exemption. The Court is simply concluding that such a determination is a common issue of law under Rule 23 that can be resolved with respect to the putative class members.

The Court addresses the next two class-certification elements, typicality and adequacy, together. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal

---

[2] While *Hudgins* addressed an FLSA collective action, "[a]t the second stage, certification is akin to the familiar Rule 23 class-certification standard." *Alvirde v. Fresh Farms Int'l Mkt., Inc*., No. 14 CV 715, 2014 WL 7265072, at *1 (N.D. Ill. Dec. 19, 2014).

theory." *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018). "Rule 23(a)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.'" *Vandehey v. Client Servs., Inc.*, No. 18 C 1669, 2019 WL 2403201, at *2 (E.D. Wis. June 7, 2019) (citation omitted). "In assessing adequacy of representation, the court must consider whether the named plaintiff[s] '(1) ha[ve] antagonistic or conflicting claims with other members of the class; (2) ha[ve] sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) ha[ve] counsel that is competent, qualified, experienced and able to vigorously conduct the litigation.'" *Id.* (citation omitted).

Plaintiff was treated as an exempt employee, so her IMWL-claim is typical of the proposed class. Moreover, the Court concludes that class counsel is qualified to conduct the litigation. CHRW argues that Plaintiff's personal claims based on employment discrimination destroy both typicality and adequacy because her personal claims will be the focus of any trial. According to CHRW, Plaintiff's wage misclassification claims are merely an afterthought, as demonstrated by the fact that most of the paragraphs in her complaint address the employment discrimination allegations. CHRW further contends that unsuccessful discrimination claims could violate absent class members' rights because such class members "could collaterally attack a judgment, arguing that the failure of those claims undermined or tainted the jury's consideration of their [wage-based] claims." (Def.'s Mem. Opp'n Pl.'s Renewed Mot. Class Cert., Dkt. # 168, at 18.) The Court is not persuaded. Any concern that the evidence regarding Plaintiff's personal claim will overshadow the IMWL claim, confuse the jury, or prejudice class members can be addressed by conducting separate trials. *See* Fed. R. Civ. P. 42 ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate . . . claims . . . ."). Accordingly, the Court finds typicality and adequacy are met.

With respect to Rule 23(b), Plaintiff seeks certification under Rule 23(b)(3), which requires her to show that: (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members ("predominance"); and (2) a class action is superior to other available methods of resolving the controversy ("superiority"). *Messner*, 669 F.3d at 811.[3] District courts should make "whatever factual and

---

[3] Rule 23(b)(3) provides as follows:

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
...
(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution

legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen,* 600 F.3d 813, 815 (7th Cir. 2010).

The predominance inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Ocampo v. GC Servs. Ltd. P'ship,* No. 16 C 9388, 2018 WL 6198464, at *5 (N.D. Ill. Nov. 28, 2018) (citation and internal quotation marks omitted). "To establish predominance, a plaintiff must be able to prove h[er] case with 'evidence that is common to the class rather than individual to its members.'" *Gordon v. Caribbean Cruise Line, Inc.,* No. 14 C 5848, 2019 WL 498937, at *9 (N.D. Ill. Feb. 8, 2019) (citation omitted). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). The evidence supporting the class members' primary duty is common to all class members: job descriptions and titles, testimony as to job duties and tasks, and compensation structure, among other things. Indeed, as previously mentioned, CHRW implicitly acknowledged the similarity of these positions when it grouped these positions as part of its reclassification efforts and expressly acknowledged this fact in its responses to interrogatories. If the Court determines that the administrative exemption does not apply to these job classifications, then the affirmative defense is resolved across the board. *See Nelson v. Avon Prods., Inc*., No. 13-CV-02276-BLF, 2015 WL 1778326, at *9 (N.D. Cal. Apr. 17, 2015) ("Defendant's argument rests on the idea that all [district sales managers] engage in duties related to management policies. This broad characterization severely undercuts Defendant's argument that the Court will need to engage in individual inquiries, let alone that those individual inquiries will predominate over questions common to the class.").

The Court further finds that "the proposed class's claims arise from a common nucleus of operative facts and issues"– that is, whether these individuals should have been paid overtime or or whether their job duties satisfy the requirements of the administrative exemption. While damages may differ across class members, "not every issue must be amenable to common resolution; individual inquiries may be required after the class phase." *Id.; see also Mulvania,* 850 F.3d at 859 ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification."). Thus, the predominance requirement is satisfied.

_____

or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Finally, the Court must decide whether a class action is a superior method of adjudicating the class's claims. CHRW contends that putative class members have an interest in individually controlling their own separate action based on their high salaries. According to CHRW, because the putative class members earn so much money (Plaintiff's annual salary was over $100,000.00 and as much as $185,000.00), certification here does not serve the core policy of class actions, which is to provide an avenue of recovery to those whose individual damages are too slight to support separate actions. But relatively larger damages awards (the amounts are not discussed by the parties) does not automatically bar the use of a class action or demonstrate that class members have an interest in controlling the prosecution of a separate action. Indeed, if the class is successful, the damages would presumably be the same as those recovered under individual actions. Moreover, because the factual and legal issues overlap with the already-certified FLSA collective-action claim, concentration of the litigation in one case with a consistent result is economical and to the benefit of all involved.

Nor is the Court concerned with manageability given that only 96 identifiable putative class members are at issue and, as the Court has already indicated, separate trials on the wage and discrimination claims should cure any concerns about jury confusion or conflicts of interest. It is true, as CHRW points out, that proceeding with an FLSA collective-action claim, which requires opting in, alongside a Rule 23 class action, which requires opting out, could cause some confusion with putative class members. Nevertheless, the Court finds that appropriate clarifying language in the class notice that specifically addresses this issue should alleviate or eliminate potential confusion. For these reasons, the Court finds a class action to be a superior method of proceeding with the IMWL claim.

**Conclusion**

For the reasons stated above, Plaintiff's renewed motion for class certification is granted.

**Date:** February 11, 2020

Ronald A. Guzmán

**Ronald A. Guzmán**
**United States District Judge**