IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TARYN DIETRICH, ) | |
| on behalf of herself and a class ) | |
| of all those similarly situated, ) | |
| ) | Case No. 18-cv-04871 |
| *Plaintiff,* ) | |
| ) | Judge Nancy Maldonado |
| v. ) | Magistrate Judge Gabriel A. Fuentes |
| ) | |
| C.H. ROBINSON WORLDWIDE, INC., ) | |
| ) | |
| *Defendant.* ) | |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

NOW COME the Class Representative, TARYN DIETRICH, and Class Counsel, M. Nieves Bolaños and Patrick Cowlin of FISH, POTTER, BOLAÑOS, P.C. and Jamie S. Franklin, of the Law Offices of Chicago Kent, and pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and this Court's Preliminary Approval Order (Doc. 267), hereby submit the following request for attorneys' fees. This request is reasonable and should be approved for the reasons below.

The Parties' settlement agreement in this matter provides Class Counsel shall receive an attorneys' fee of $1,400,000 for their work on this case plus an additional $15,000 in costs, which amounts to about one-third of the $4,300,000 settlement fund. Doc. 261-3, at pp. 8-9. This proposed award is fair, reasonable and adequate, in light of the work Class Counsel performed and the outstanding result that has been achieved. As set forth at the preliminary approval stage, the settlement will provide each employee in the certified class approximately five hours of overtime pay for each week worked during the limitations period, which reaches back to July 2015. Doc. 261-2, ¶32. This amount represents the payment they would have received had then

been classified as nonexempt, assuming their standard fifty-hour workweek and approximately one-hour per day for breaks. Further, every class member can participate in this settlement without having to file a claim form. The settlement avoids the inherent risks, time, and expense of continued litigation, including a trial and almost certainly appeals, and class members are providing only a limited release. This excellent result is the product of four and one-half years of work during which Class Counsel advanced their time and costs, through each stage of the litigation, with the real possibility they might not be paid at all if the suit were unsuccessful in the end. The one-third fee requested here is within a range that has repeatedly been approved in Seventh Circuit jurisprudence in similar class and collective wage and hour settlements, and as set forth below, the request is well-justified here.

## RELEVANT FACTS

Class Counsel filed this suit on behalf of Ms. Dietrich and the Class July 17, 2018. Doc. 1. In this suit, Ms. Dietrich alleged (and demonstrated at summary judgment) that she and other Carrier Sales Employees were misclassified as "exempt" under the FLSA and IMWL, that class members were similarly paid a base salary plus commissions with no additional pay for overtime, that they regularly worked overtime (more than forty hours per week) due to their fifty-hour per week shift assignments, that their "primary duty" (booking loads of freight) amounted to direct individual sales, that this duty was CHRW's core function (i.e., its revenue generator), that saleswork is "nonexempt" under the FLSA and IMWL, and that "junior" entry-level employees booked freight, and as such, this function did not require significant levels of discretion or independent judgment. *Id.,* and Docs. 217, 234-1, 238. Ms. Dietrich's Complaint also alleged separate, individual claims of employment discrimination and retaliation that were dismissed on summary judgment and are not part of the settlement. Doc. 238.

2

Throughout the litigation, CHRW was represented by experienced wage and hour counsel, and it vigorously disputed the merits of the suit and opposed Plaintiff's efforts to certify the class and collective at every stage of the case, up to the eve of trial when the instant settlement was achieved with the assistance of Judge Wayne Anderson (Ret.). Class Counsel expended great time and resources to rebut CHRW's defenses to this action, including its claims that class members' primary duty was administrative work, that class members regularly exercised discretion and independent judgment in matters of significance, and that the violations, if proven, were not "willful" within the meaning of the FLSA. As a result of Class Counsel's efforts (and of course, the efforts of Ms. Dietrich and other Class Members), the Plaintiffs prevailed at every stage of the wage and hour claims in this lawsuit -- at the pleading stage, at collective action certification, in their discovery motions, at class certification, in CHRW's requests to decertify the class and collective, and at summary judgment.

*To wit*, on September 17, 2018, Defendant filed a Motion to Strike Plaintiff's Collective and Class Action Allegations and to Dismiss the Complaint. Doc. 17. The Court, *sua sponte*, requested briefing on the inclusion of Ms. Dietrich's individual claims in the suit, and on October 23, 2018, after Class Counsel addressed these issues in their Memorandum of Law, the Court determined the inclusion was appropriate. See, Docs. 28, 29, and 30. On November 7, 2018, Class Counsel responded to the aforementioned motion to strike and dismiss, and on December 6, 2018, the Court denied the request to strike the class and collective allegations and determined these class claims would go forward. Docs. 37, 40.

On December 12, 2018, the Court directed Defendant to file a memorandum setting forth its objections to the inclusion of individuals who signed arbitration agreements in the proposed

3

class, and Defendant filed its Memorandum and Objections on January 9, 2019. Docs. 41, 43. Class Counsel responded on January 30, 2019. Doc. 49.

Plaintiff filed her Amended Complaint on December 20, 2019. Doc. 42. Defendant answered the Amended Complaint on March 19, 2020. Doc. 60. In its Answer, *inter alia*, Defendant asserted that the Carrier Sales Employees in the proposed class and collective were properly classified as administrative and/or highly compensated employees and therefore, it was not required to pay them additional wages for overtime under the FLSA or IMWL. Doc. 60.

On March 19, 2019, Plaintiff filed her motion for conditional certification of a collective action pursuant to Section 216(b) of the FLSA. Doc. 62. On March 20, 2019, the Court struck this Motion without prejudice, and directed Plaintiff to file a statement as to whether she was willing to eliminate employees who signed arbitration agreements from the proposed collective's definition. Doc. 64. On March 27, 2019, Plaintiff filed the statement and agreed to remove employees who signed arbitration agreements from the proposed collective's definition. Doc. 70.

On April 1, 2019, Class Counsel refiled Plaintiffs' motion for conditional certification pursuant to Section 216(b) of the FLSA based on the redefined collective. Doc. 75. On June 13, 2019, following briefing and discovery, the Court granted the motion, and it authorized Notice be sent to the following collective:

> All persons who have been employed in the state of Illinois at C.H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Representatives, Carrier Account Managers, Senior Carrier Account Managers, Capacity Account Managers, and/or other similar positions, and who did not sign a C.H. Robinson arbitration agreement, at any time from three years before the filing of this action through and including the present.

Doc. 103. On July 8, 2019, the Court approved the form of notice to be sent to the certified collective. Doc. 106. During the Notice and Opt-In period, Benjamin Boyer, Haley Crowe, Ryan

4

Lind, Zachary Payton, Travis Ruhl, Elan Serfaty, Abigail Tantillo, and Darien Veal filed consents to join the suit with the Court. Docs. 110, 118, 122, 135, 136, and 137.

On April 8, 2019, Class Counsel filed Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23. Doc. 84. On April 9, 2019, the Court dismissed the motion without prejudice. Doc. 87. On September 23, 2019, after comments by the Court to the effect that class certification was inappropriate and was incompatible with its prior order certifying the collective, Class Counsel refiled the motion and addressed the Court's concerns. Doc. 139, at 5-6 and Doc. 147 at 21-24. On November 12, 2019, Defendant filed its response in opposition. Doc. 168. On February 11, 2020, the Court certified the following class pursuant to Fed. R. Civ. P. 23(b)(3):

> All persons who have been employed in the state of Illinois at C.H. Robinson as Assistant Carrier Account Managers, Buyers, Carrier Representatives, Carrier Account Managers, Senior Carrier Account Managers, Capacity Account Managers, and/or other similar positions, and who did not sign a C.H. Robinson arbitration agreement, at any time from three years before the filing of this action through and including the present.

Doc. 179. The Court's order appointed Ms. Dietrich as the Class Representative and Plaintiff's undersigned attorneys as Class Counsel. *Id.* On March 12, 2020, the Court approved Plaintiff's proposed class notice pursuant to Fed. R. Civ. P. 23(c) and notice was subsequently sent to all class members advising them of the class certification order and their right to submit a request for exclusion and opt out of the case. Doc. 183. No member of the class opted out.

During the discovery period, the parties took the depositions of ten witnesses (including out of state, at CHRW's corporate offices in Minnesota), exchanged sworn interrogatories, and submitted sworn declarations from seventeen witnesses. Doc. 261-2, ¶¶21-22. The parties produced and exchanged more than 236,000 pages of documents relevant to their claims and defenses, including policies, emails, instant messages, disciplinary records, communications, memoranda, payroll records, records relevant to Defendant's "reclassification project" in which it

5

analyzed the exempt status of the positions, and other relevant documents, and they engaged in substantial motion practice relevant to discovery. See Docs. 59, 82, 132, 133, 134, 167. Indeed, discovery was vigorously contested, and Class Counsel filed numerous discovery-related motions upon which they substantially prevailed. *Id.*

On September 17, 2020, the Court denied CHRW's request to file a motion to decertify the class and collective action but granted it leave to file a motion for summary judgment. Doc. 196. On November 24, 2020, it filed its motion for partial summary judgment in which it sought to dismiss the wage and hour claims for employees in two of the three job position groups in the defined class and collective (Carrier Account Managers and Senior Carrier Account Managers), along with Dietrich's individual employment claims. Doc. 197.[1] Therein, Defendant argued that the positions were properly classified as exempt because the employees perform administrative work for CHRW's customers and because they regular exercise substantial levels of discretion and independent judgment. *Id.* It further argued there was no evidence of a willful violation under the FLSA. *Id.* On February 19, 2021, Plaintiff filed her response in opposition to Defendant's motion for partial summary judgment. Doc. 217. On March 31, 2021, CHRW filed its Reply. Doc. 229. Thereafter, the parties each filed sur-replies that focused on whether class members' primary duty is "saleswork" and the admissibility of evidence relating to CHRW's 2016 reclassification project under Rule 407 of the Federal Rules of Evidence. Docs. 234, 237.

On August 9, 2021, the Court denied summary judgment relevant to Plaintiff's wage and hour claims in its entirety and on every issue. Doc. 238. The Court set the case for trial to begin on November 1, 2022. Doc. 240.

---

[1] Defendant did not move for summary judgment on the "buyer" (also referred to as Carrier Representative) position, and it voluntarily reclassified these employees as "exempt" in January 2017. See, Doc. 217 at 18-19.

6

On August 26, 2022, shortly prior to the scheduled trial date, the Parties participated in an in-person settlement conference with Retired Judge Wayne R. Andersen of JAMS. Doc. 261-2, ¶27. The negotiations were contested and protracted – the settlement conference lasted all day and into the evening, the parties exchanged approximately ten rounds of offers and counteroffers, Class Counsel discussed their claims and legal theories with Judge Andersen and listened to his thoughts and impressions. *Id.*, ¶27. The parties were unable to resolve the matter that day but agreed to continue discussions, through Judge Andersen. *Id.*, ¶28. On September 13, 2022, after further discussion and negotiation, the parties ultimately reached an agreement to settle the claims for $4.3 million inclusive of attorneys' fees, with no "claim-in" requirement, among other terms. *Id.*, ¶29. Prior to the settlement, Class Counsel prepared for trial and were getting ready try the case in the event a settlement could not be reached. *Id.,* ¶55.

As set forth at the preliminary approval stage and summarized above, the settlement provides an excellent result to class members. This result was the product of years of work by Class Counsel, described above, and also, of course, the efforts of Ms. Dietrich and the consent Plaintiffs that were detailed in the Preliminary Approval Motion. *See* Doc. 261-2. Class Counsel brought this case with the known risk that their efforts might not be compensated due to the contingent nature of their representation, that a class might not be certified and/or they might not prevail (in whole or in part) on the merits. In the end, the result is a $4.3 million settlement that is a great success for the Class as a whole.

## LEGAL STANDARD

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common

7

fund doctrine "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007), *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). Where, as here, a class action settlement creates a monetary fund in exchange for release of the defendant's liability for damages and statutory attorney's fees, common fund principles govern the court's award of the attorney's fees. *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994), citing, *Skelton v. General Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988), *cert denied,* 493 U.S. 810 (1989); *see also*, *McCue v. MB Fin., Inc.*, No. 15 cv 988, 2015 U.S. Dist. LEXIS 96653, at *7-8 (N.D. Ill. July 23, 2015).

## ARGUMENT

The settlement provides for attorneys' fees in the amount of approximately thirty-three percent of the common fund, or $1,400,000, as set forth above. This proposed fee is fair, reasonable and adequate in light of the facts of this case and applicable Seventh Circuit jurisprudence.

It is well-established that courts may use the percentage of the fund method to determine an appropriate fee award in common fund cases. *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005); *see also*, *McCue*, 2015 U.S. Dist. LEXIS 96653, at *7-8 ("Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating in order to recover a larger fee."), *citing*, *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003).

In fact, the percentage of the fund approach is <u>favored</u> in the Seventh Circuit over the lodestar approach. *Williams v. General Elec. Capital Auto Lease,* No. 94 C 7410, 1995 U.S. Dist. LEXIS 19179 *29 (N.D. Ill. Dec. 16, 1995) ("The approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred on the class.") (citations

8

omitted); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *27 (S.D. Ill. Dec. 13, 2018) (stating the percentage method is employed by "the vast majority" of courts in the Seventh Circuit) (citations omitted).

The use of a lodestar cross-check has been described as "unnecessary, arbitrary, and potentially counterproductive" in a percentage-of-the-fund case. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n. 27 (N.D. Ill. 2011) (citing *Will v. General Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *3 (S.D. Ill. Nov. 22, 2010)); *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *9-10 (S.D. Ill. Mar. 31, 2016) ("The use of a lodestar cross-check is no longer recommended in the Seventh Circuit.") (citations omitted).

A one-third fee is within the range that has been presumed reasonable in Seventh Circuit jurisprudence. *Taubenfeld*, 415 F.3d at 600 (Noting, "Lead counsel submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund."); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368, at *35 (S.D. Ill. Dec. 13, 2018) ("Courts within the Seventh Circuit, and elsewhere, regularly award percentages of 33.33% or higher to counsel in class action litigation."); *Briggs v. PNC Fin. Servs. Grp.,* No. 1:15-cv-10447 2016 U.S. Dist. LEXIS 165560, at *12 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.) (Approving a proposed wage and hour settlement and stating, courts in this District "routinely" hold that "one-third of a common fund is an appropriate attorneys' fees award in class action settlements" and approving fee request of one-third of recovery in wage and hour action); *Woodrow v. Sagent Auto LLC*, No. 18-CV-1054-JPS, 2019 U.S. Dist. LEXIS 118901, at *3 (E.D. Wis. July 17, 2019) ("Fees up to one-third of the

9

common fund are presumed to be reasonable" and "contingency fees of up to 40% are common") (citations omitted).

Courts in the Seventh Circuit have repeatedly approved one-third fee requests in wage and hour settlements on behalf of classes and collectives similar to that requested here. *Osorio et al. v. Sprint*, No. 08 c 3228 (N.D. Ill.) (Darrah, J.) ECF. 175, ¶8 (approving fee request of one-third of total recovery in wage and hour class action); *Cioe et al. v. Cellco Partnership et al.*, No. 1:11-cv-1002, ECF. 161, ¶13 (Valdez, J.) (same); *Peraza v. Dominick's Finer Foods, Inc.*, No. 11-C-8390 (N.D. Ill.) (Lee, J.) ECF. 52, ¶9 (same); *Lueders et al. v. 3M Company*, 4:08-cv-04047 (C.D. Ill.) (Mihm., J.) (ECF. 81, at p. 13, and ECF. 97, ¶16) (same); *Acosta vs. Scott Labor,* N.D. Ill., Case No. 05 C 2518, ECF No. 120 (same); *Sanchez v. Stampede Meat, Inc.*, N.D. Ill., Case No 02 C 5452 (ECF No. 70) (same); *Gonzalez v. Labor Network*, Case No. 05 C 4864 (ECF No. 137) (same); *Flores v. Jorge Arteaga Corp.*, N.D. Ill., Case No. 05 C 2057, ECF No. 53 (same); *Romo v. Manpower, Inc.,* Case No. 09 C 3429, ECF No. 249 (N.D. Ill. ) (same); *Rosales v. The Placers, Ltd.,* Case No. 09 C 1706, ECF No. 162 (N. D. Ill.) (same); *Williams v. Volt Management Corp*, Case No. 10 C 3927, ECF No. 52 (N.D. Ill.) (same); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752, ECF No. 78 (N.D. Ill) (same); *Arango v. Landrys,* No. 1:12-cv-9354 (N.D. Ill.) (approving 30% fee); *Perry v. National City Bank*, Case No. 05 C 891 DRH, ECF No. 81 (S.D. Ill.) (same).

This case has been vigorously litigated for more than four years as set forth above, and even if the (disfavored) lodestar method were employed, the requested fee would be justified. For similar reasons, given the expansive discovery conducted in this case (including ten depositions, two of which were conducted in Minnesota, and the voluminous document

production), plus the forthcoming settlement administration, the requested $15,000 in costs is also well-justified.

Class Counsel are nationally renowned litigators with proven expertise and decades of experience in complex litigation, large employment class actions and class and collective wage and hour suits. Doc. 261-2, ¶¶ 58-80, and at pp. 20-37. Their knowledge and experience enabled them to advance the case and achieve the excellent results described above, and this factor also supports the requested fee. *Briggs v. PNC Fin. Servs. Grp.*, 2016 U.S. Dist. LEXIS 165560, at *10 (Approving one-third fee in part because "Plaintiffs' Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the class and collective.")

Class Counsel executed a contingent fee agreement with Ms. Dietrich that provided for forty percent (40%) of any recovery, and Class counsel routinely negotiate similar agreements in their practice, another factor supporting the reasonableness of the requested fee. Doc. 261-2, ¶53; *Briggs v. PNC Fin. Servs. Grp.*, 2016 U.S. Dist. LEXIS 165560, at *10-11 (Finding Plaintiffs' contingent fee agreement is a reflection of the relevant market rate and noting, "In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery.")

Class Counsel assumed great risk in bringing this action. The case's (successful) outcome was, of course, not known in advance. Absent settlement, a jury, the Court, or the Seventh Circuit in the event of an appeal could have ultimately found for the Defendant on numerous issues relevant to its requests to decertify the class, liability, and/or damages. Class Counsel

invested their Firm's limited time and they advanced costs and resources with the very real risk of an unsuccessful outcome and no fee of any kind. *Id.*, ¶54.

Class actions of this type are, by their very nature, complicated and time consuming. *Id.* Any lawyer undertaking representation of large numbers of affected employees in class actions inevitably must be prepared to make a tremendous investment of time, energy, and resources, with the risk of coming away with nothing if the suit is not successful. *Id.* This substantial risk that Class Counsel took in pursuing this action to a successful conclusion also supports the requested fee. *Briggs*, 2016 U.S. Dist. LEXIS 165560 *13 ("Plaintiffs' Counsel also faced significant legal hurdles in establishing certification and proving liability. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost everything" they invested."), *quoting, Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

In determining an appropriate fee award, the Court may also consider the overall benefit of the litigation and settlement to the class as a whole when evaluating a fee request. *Spano*, 2016 U.S. Dist. LEXIS 161078, at *5 (Stating it is "important" for the court to consider non-monetary benefits when evaluating the fee request "so as to encourage attorneys to obtain meaningful affirmative relief"), *citing*, *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S. Dist. LEXIS 12037, at *5 (S.D. Ill. Jan 31, 2014) (J. Herndon) (citing Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)). The benefit here is enormous -- under the settlement agreement Class Members will sign limited (not general) releases and are not required to submit claims; rather, to participate, they may simply endorse their checks. *Id., and see Ramah Navajo Chapter v. Babbitt,* 50 F. Supp. 2d 1091, 1103-04 (D. N.M. 1999) (noting that the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

For all these reasons, the (approximately) one-third fee provided for by the Settlement Agreement is fair, reasonable and adequate and should be approved.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, the court should award Class Counsel attorneys' fees in the amount of approximately one-third of the common fund created by the settlement in this action, or $1,400,000 plus an additional $15,000 in costs.

    Respectfully submitted,

    /s/ Patrick Cowlin
    One of Plaintiff's Attorneys

Robin Potter
M. Nieves Bolaños
Patrick Cowlin
FISH, POTTER, BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
(312) 861-1800
robin@fishlawfirm.com
nieves@fishlawfirm.com
patrick@fishlawfirm.com

Jamie S. Franklin
Law Offices of Chicago Kent
565 West Adams, Suite 600
Chicago, IL 60661
(312) 906-5048
jfranklin5@kentlaw.iit.edu

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing **Plaintiff's Motion for Attorneys' Fees and Costs** was served upon all parties by e-filing on March 28, 2023 with the Clerk of the Court using the CM/ECF system.

By: /s/ Patrick Cowlin
Patrick Cowlin